The Utica Cotton Manufacturing Company *vs.* The Supervisors of Oneida County and others.

It is a matter of course to give costs to a complainant, upon overruling a demurrer to his bill; unless there is something very special in the case, to take it out of the general rule.

An appeal will not lie for the granting or refusing of interlocutory costs which are in the discretion of the court.

The estate of a corporation which is taxable as personal property, is only that portion of its capital which is not invested in real estate. But the capital of a corporation embraces the whole of its stock paid in, or secured to be paid; whether it is invested in real or personal property.

The principle of the revised statutes in regard to the taxation of corporations is, to tax the real estate of each corporation, except as to canal, turnpike, and bridge

The Utica Cotton Manuf. Co. v. The Supervisors of Oneida.

companies, upon its *actual* value, for the benefit of the inhabitants of the town and county where it is situated, in the same manner as the property of individuals is taxed.     And to tax the residue of its capital, after deducting the *cost* of its real estate, as personal property; for the benefit of the inhabitants of the town and county where the financial concerns of the corporation are carried on.

Under the 9th section of the fourth title of the article of the revised statutes relative to the assessment of taxes on incorporated companies, &c. the real as well as the personal estate of a corporation, is exempted from taxation; provided a satisfactory affidavit is presented to the board of supervisors of the county in which such property is assessed, showing that such company is not in the receipt of any income or profits, either from its real or personal estate.

If such an affidavit is made, and filed with the clerk of the board of supervisors, within the time prescribed by the statute, it is the duty of such board to strike the name of the corporation out of the assessment roll.

But the board of supervisors should require the affidavit to be in such a form as to leave no doubt upon their minds that the real as well as the personal estate of the corporation is wholly unproductive; so that it yields neither rents nor income which are received by the corporation or its agents.

THIS was an appeal, by the defendants, from a decretal order of the vice chancellor of the fifth circuit, overruling a demurrer to the complainants' bill.     The complainants were an incorporated manufacturing company, located in the town of New-Hartford, in the county of Oneida; and their bill was filed against the collector of the town, and the board of supervisors of the county, to restrain them from collecting a tax imposed upon the real estate of the complainants.     The corporation was assessed upon its capital stock, exclusive of the cost of its real estate, and upon its real estate, in the town where it carried on its business. The president of the company, within the time prescribed by the ninth section of the title of the revised statutes relative to the assessment of taxes on incorporated companies, produced to the board of supervisors an affidavit, showing that the corporation was not in the receipt of any profits or income; and claimed to have both its real and personal estate exempted from taxation.     The board of supervisors decided that the corporation was not liable to taxation upon its capital, and therefore struck from the assessment roll the part of its capital which was assessed as personal estate.     But they also decided that its real estate was liable to taxation, and therefore refused to strike from the roll the assessed value of the real estate of the corporation

situated in New-Hartford, and taxed the same, in the manner the real estate of individuals is taxed. There was a general demurrer to the bill for want of equity; which demurrer the vice chancellor overruled with costs.

*Charles Tracy*, for appellants. I. The vice chancellor erred in giving costs against the defendants. The board of supervisors are public officers merely; administering the department of taxation on behalf of the public. There is no propriety in requiring them personally to pay costs for correcting their errors. Nor should the funds in the hands of the board be charged with costs. The board acts quasi judicially, upon the presentation of the affidavit. The county is not affected by the disposition made of the affidavit; the county raises its aggregate tax, which is no more nor less on account of any exemptions to individuals. The county fund is the same, no matter who is made to pay the tax. Besides, the principle adopted by the board in this case had previously received the sanction of the attorney general, the legislature, and the supreme court.

II. The vice chancellor erred on the main proposition in the case. The board of supervisors were right in applying the exemption as they did, and imposing a tax on the real estate. (1 *R. S.* 416; 2*d ed.* 404, § 9.) The particular section relied on by the complainants, when taken in connection with the residue of the statute, does not intend an exemption of real estate. 1st. The whole subject of assessment and collection of taxes is contained in chapter 13 of part 1 of the revised statutes; (1 *R. S.* 387; 2*d ed. p.* 379.) It is separated into several distinct titles, each complete in itself. Thus title 1st defines what property shall be subject to taxation; title 2d gives the mode of assessment; title 3d the manner of collecting taxes; title 4th prescribes regulations for assessing and collecting against corporations. Title 1st commences by declaring that all lands and all personal estate situated within this state, whether owned by individuals or corporations, shall be liable to taxation " subject to the exceptions hereinafter specified." (*Idem*, § 1.) It then defines certain terms, and declares that " personal estate" includes " such por-

tion of the capital stock of incorporated companies, liable to taxation on their capital, as shall not be invested in real estate." (*Idem*, § 3.) Then follows a section giving the *exemptions* referred to in section one. " The following property shall be exempt from taxation," enumerating things exempt by constitutional provisions, lands of the government, colleges, churches, &c., stock owned by literary and charitable institutions, and (by the 7th subdivision) " the personal estate of every incorporated company not made liable to taxation on its capital, in the fourth title of this chapter." (*Id.* § 4.) The result and effect of all these provisions is, that all lands and all personal estate are taxable, except as exempted; that exemption to a manufacturing company reaches its personal estate only; that such personal estate consists of its capital stock remaining after deducting what it holds in lands; and therefore the lands of such a company are never exempt, but always liable under the first section. It is idle to hunt about for other and *inconsistent exemptions*, and to endeavor to gather them by implication in subsequent titles, when the legislature has chosen this very place to collect and declare all the exemptions; and has grouped and arranged them with system and care. The arrangement of our statutes in chapters and titles, is an important feature in the revision. These divisions are material to the construction; they are significant and have important meaning ; and they declare an intent of the legislature. To disregard or to slight them, would be to deny the essentia. principle, and reject the main advantage of codification. When therefore the first four sections of title one are read, it is known that no exemptions of the lands of an incorporated company is intended ; and with this leading principle thus settled, one is prepared to look into the subsequent titles for the details of proceedings by which the design of the act is to be executed. 2d. The 4th title commences by declaring that all moneyed or stock corporations deriving an income and profit from their capital or otherwise, shall be liable to taxation on their capital. (1 *R. S.* 414; *2d ed.* 415 § 1.) Such companies are to furnish to the assessors of the town where the office of the company is situated, certain statements, showing what part

of the stock is held by charitable and literary institutions, and distinguishing the real and personal estates of the corporation. (*Id.* § 2.) The assessors of that town enter the name of such company in their assessment roll, with the gross amount of its capital ; the amount invested in lands ; and the amount held by literary and charitable institutions or the state, and the lands of the company in that town. (*Id.* § 6.) The 3d subdivision does not apply to manufacturing companies. Under the third head, in cases of manufacturing companies, the assessors are to set down the present value of the aggregate stock of the company, and deduct from it the stock held by literary and charitable institutions, and the state, and the amount invested in lands ; and the residue after such deduction, together with the lands, constitutes the basis of taxation for that company. (*Id.* § 7.) Thus the distinction between real and personal estate is kept up throughout. The obvious reason for this is, that these provisions are preparatory to the process for relieving the personal estate alone from assessment. If the application of the exemption was to be to both lands and personal estate, the whole machinery devised for distinguishing between the two would be useless and insensible. These provisions have some design ; they exist for some purpose; and it is just to infer the design and purpose from the use to which they adapt themselves ; the enabling of a manufacturing company to escape a tax on personal, while it pays a tax on its real estate. Then follows section 9, which authorizes the presentation of an affidavit, and declaring that when the board becomes satisfied, " the name of such company shall be stricken out of the assessment roll, and no tax shall be imposed upon it." It is upon a strict verbal and literal construction of this language, the enforcement of the largest possible sense into every word, and the oblivion of all other provisions of the statute, that the complainants make their reliance. We contend against such a construction, and insist on the taking of the whole act into view in determining the true meaning of this part. This passage has reference to all the previous provisions, and is to be understood as indicating the manner in which the exemption of personal estate is to be accomplished, and not as declaring what property

is entitled to exemption. The very next section proceeds on the assumption that what may be done under the 9th section, will yet leave something to be assessed against the company. The language of the 9th section merely imports that the name of the corporation as such, is to be struck out : that is, that whatever upon the roll is peculiar to it as a corporation, whatever property it holds in the manner peculiar to such an artificial person, its invisible stock, its artificial chattels, its effects of the sort that corporations alone, and not natural persons, can grasp, shall come out of the roll ; but whatever it holds or is charged with on the roll in the same manner with natural persons, viz. its real estate, shall remain in the roll and be taxed. The company is assessed like individuals in respect of lands, but very differently as regards personal estate ; and the true intent of this section is to strike from the assessment roll all these peculiar entries, the corporation assessment, and leave the land assessment standing. 3d. The particulars which are entered in the assessment roll, in the case of a manufacturing corporation, different from the assessments of individuals, are so entered in only one town, the town where the company has its office. In all other towns, wherein the company has real estate, the assessors are to enter the real estate on their roll in the same manner as if it belonged to an individual. (1 *R. S.* 389, § 1 *to* 6. *Id.* 2d ed. 380. 4 *Paige*, 394.) Now the board of supervisors are to strike the name of the company from that one roll in which the corporate stock is entered, and not from any other. The board seems to have no power over the assessments in other counties, nor even over any roll but the one which comes from the town where the company keeps its office and furnishes the statement to the assessors. Consequently the assessment of all the lands of a corporation beyond the limits of the town in which its office is situated, is not subject to the power of the board. This result harmonizes with our view of the subject ; for we regard the exemption as relating to personal estate alone. But on the complainants' doctrine, it leads to the absurdity that all lands of their company within the town where their office is situated are exempt, and all their lands elsewhere are taxable ; and

thus prunes off from the section the words "no tax shall be imposed upon it. 4th. The policy of exempting manufacturing companies from taxation, does not require nor favor the exemption of their real estate. The privilege thus granted is limited to those years when the company receives no profits nor income from its capital. This has been explained and judicially declared to mean, that the company must be absolutely not in the receipt of any income at all; and if it receives any thing by way of income, and yet loses much more, it has not the privilege. (*People* v. *Supervisors of Niagara*, 4 *Hill*, 20.) The cases, therefore, in which the company can claim the privilege, usually are those in which the company has lain idle. But it often happens that the real estate of the company is large, and has risen in value during the year. Its factory site, its water right, its village of lodges, the lands it has acquired in payment of debts, the tracts it owns to secure a supply of ore, or wood, or coal, or water, may have risen while the wheel was still, and the company may have had a very good year and yet be within the terms of the section. The only just, or even tolerable way to make taxation equal in the case of these companies, is to assess the land always, and to relieve the personal property when an affidavit can be made. The legislature never intended to allow a company, under the name of a manufacturing corporation, to engross and hold large real estates, and by virtue of an old mill that cannot work, to escape the whole burden of taxation. Corporations of this sort are fabricated at will and can be dissolved at the volition of the stockholders. The privileges thus granted were not intended as a dispensation of the common duty incident to real estate, to bear the burdens of taxation. The provisions of the 2d title of the statute make the assessment of all lands local. Whether it is owned by individuals or corporations, the land is always entered on the assessment roll, and taxed in the town where it lies. Can it be held that the proceedings before the board of supervisors, in the county where the company holds its office, shall exempt from taxation the lands of that company lying in other counties and in parts remote from its factory, where property is not affected by the

good or ill fortune of the company, and where taxable inhabitants derive no benefit from its business? 5th. It is believed that the practice of boards of supervisors has been like that of the present defendants. In Jefferson county, a different course was pursued till 1833, and since that time the board in that county is understood to have acted on the same principle for which we contend.

III. The views we advocate, have received a judicial sanction in the supreme court. (*See People* v. *Supervisors of Niagara,* 4 *Hill,* 20.) Mr. Justice Bronson gives his views of this question at page 26. The exemption goes only to the tax on the balance of the capital, after deducting the amount paid for lands, and the lands are taxed separately. He therefore holds that a rail-road company must pay tax on its real estate when its personal capital is exempt. The judgment in this case was affirmed in the court for the correction of errors in Dec. 1844. (*See 7 Hill, S. C.*)

IV. The same doctrine has had the sanction of a construction by the legislature itself. In 1833, The Black River Cotton and Woollen Manufacturing Company applied to the legislature for relief against a tax of $200 and upwards. The ground of the application was, an accidental omission to file the affidavit with the board of supervisors. The following were the proceedings. A petition was presented and it was referred to the committee on the judiciary; who subsequently presented a written report. In this report the committee gave their opinion that the 9th section extends the exemption over the real and personal estate of the company; and being satisfied that the omission to file the affidavit was well explained, they recommended that the whole tax be relieved against; and they brought in a bill accordingly. (*Senate Jour.* 1833, *pp.* 88, 94. *Sen. Doc.* 1833, *Vol.* 1, *No.* 21.) A resolution was then adopted, requiring the attorney general to submit to the senate his opinion whether the exemption granted by the ninth section of title 4th of chapter 13th of the first part of the revised statutes, to certain incorporated companies, extends so far as to exempt the lands and real estate of said companies from taxation. Subsequently the attorney general, (now Chief Justice Bronson,) reported his opinion: sustaining throughout

the views here put forth on behalf of the appellants.    The sub-
ject is considered fully and carefully.    (*Sen. Jour.* 1833, *pp.* 100,
116.    *Sen. Doc.* 1833, *Vol.* 1, *No.* 33.)    The bill passed the sen
ate and became a law.    (*See Sess. Laws of* 1833, *p.* 88.)    Upon
examining the act as amended and passed, it is seen that the
views of the attorney general were adopted by the legislature;
the exemption being granted only as to the personal estate, and
the tax on the real estate being retained.

These proceedings were deliberate.    The precise question
now before the court, was the whole question then before the
legislature.    The committee gave an opinion in favor of exempt-
ing real estate; the senate doubted, and called for the attorney
general's opinion; that officer reported an opinion that real es-
tate was not exempt, and the question then came up in com-
mittee of the whole, and was discussed at two sittings.    The
bill prepared by the committee was amended in conformity with
the attorney general's views, and was finally passed as amended.

We have, therefore, a legislative exposition of this statute,
equivalent to an act declaring that the appellants' doctrine is cor-
rect.    This should be the end of controversy.    It was compe-
tent for the legislature to determine the meaning and effect of a
statute, at least so far as subsequent cases could be affected, and
in this case that power of the legislative department has been
exercised on the most deliberate consideration, and in the most
public and solemn manner.

*D. Wager*, for respondents.    I.   By the statute, the respondent
was entitled to have its name struck from the assessment roll,
and to be exempt from taxation.    (1 *R. S.* 404, § 9.)   The affi-
davit was in exact compliance with the statute.    It was satisfac-
tory to the board of supervisors, and they discharged the personal
tax, in consequence.

II.   The exemption is complete and final as to every portion
of the assessment, whether it be on real estate, on capital, or on
income.    An attempt has been made to show that the real estate
of a corporation does not fall within the statutory exemption,
and is therefore taxable.    But the statute itself makes no distinc-

The Utica Cotton Manuf. Co. v. The Supervisors of Oneida.

tion of property. Its express language is that if satisfactory proof be supplied according to the 9th section, "the name of the company shall be struck from the assessment roll, and no tax shall be imposed upon it." The name of the corporation cannot be retained for a portion of the tax, any more than for the whole. It must be absolutely struck off.

If the name of a *person* be struck from an assessment roll, clearly no tax can be collected from that person. He cannot be named in the collector's warrant. He is lost for all the purposes of taxation. It is the same with a corporation. If an assessment on the real estate of corporations were designed by the statute, and an exemption of the personal only, it was not difficult to express the distinction. Three or four simple words would have done it; and when it is remembered that the section in question has passed under a number of critical eyes before its enactment in its present shape, the fact that such a distinction has not been made, is strong evidence that it did not fall within the intention of the legislature. The law of 1817 (*see Sess. Laws* 1817, *p.* 54,) appears to be the first statute containing the exemption. The exemption was confined to "all the buildings, machinery, and the manufactured articles in the hands of the manufacturer, of every cotton, woollen or linen manufactory within this state." This act was entitled "An act for the encouragement of manufactures within this state." Next in the course of legislation, appears to be the act of 1825, which was an act in relation to the assessment and collection of taxes. (*Sess. Laws*, 1825, *p.* 374, § 7.) This law appears to have been expressly aimed at corporations, which it seems had before that time contrived to evade taxation. The object of the legislature was to prevent this evasion, and to compel corporations to share the public burthens. It is not, therefore, in the least likely that a loop hole should have been left in that law, for their escape, unless it were left designedly. Banks and insurance companies were principally aimed at. But there was another sort of corporations which deserved to be fostered; and the more so, because they conduced to the public advantage, and at the same time were experimental, and uncertain of reaping a profit from their ven-

tures. Among these were manufacturing corporations. This statute, as well as that of 1817, looked upon them with a kindly eye; and all favorable exemptions consistent with wise legislation were allowed to them. Should their property prove unproductive, it was not deemed reasonable that it should be taxed; and a provision was therefore made in the statute, adjusting their burthens to their profits and income.

The first section of the statute of 1825, provides that the property of corporations, real as well as personal, should be inserted in the assessment rolls. The seventh section provides for the exemption of the whole from taxation, on the filing of an affidadavit similar to that required by the provision in the revised statutes already referred to.

The revisers, and the legislature which adopted their report, must have intended this exemption: otherwise it could not have found its way into the existing statute, at least in its present connection. The sixth section fixes the details of the assessment roll very exactly, and provides that there shall be a column for the real estate of corporations, as well as one for their stock. (1 *R. S.* 404.) The seventh section declares that both real estate and stock shall constitute the amount on which the tax shall be levied. Then comes in the ninth section, on which the respondents rely, providing that under certain specified circumstances, no tax shall be levied, and that even the very name of the corporation shall be struck from the roll.

If any further evidence of the intention of the statute be required it may be found in the report of the revisers, where they expressly say that they paid particular attention to this matter of taxing corporations, on account of continued misapprehension on the part of assessing officers and boards of supervisors. (3 *R. S.* 501, 2*d ed.*) And in terms of good plain English, the ninth section covers every thing that the respondent claims: no tax shall be imposed; the name of the party shall be struck from the roll. It conveys a determination, as express and full as language can convey it, to cut off taxation in all its branches, under those circumstances which seem to justify any exemption whatever. The intention of the revisers is further shown by the

The Utica Cotton Manuf. Co. v. The Supervisors of Oneida.

fact that this very section was modified by them from the law of 1825; and the intention of the legislature is shown by the fact that they modified the section as reported by the revisers. (*See* 3 *R. S.* 496, 1 *Id.* 379, 380.) The statute which exempts the real estate of literary institutions, and of ministers of the gospel, from taxation, is not more explicit, nor more in conformity with the general spirit of the laws respecting taxation than this which allows a qualified exemption to corporations. And as well might assessors and supervisors embrace in the assessment roll the estates of colleges and clergymen, and put them to their remedy, as to fly in the face of an equally positive statute enacted for the benefit of corporations.

The case of The Black River Cotton and Woollen Manufacturing Company, referred to by the appellants, shows what was the construction of the law given by the supervisors of Jefferson county for years, and the construction which was obvious to the judiciary committee of the senate. The petition stated that for several years that company had not been assessed, in conse·quence of showing that it was not in the receipt of profits or income. The statute was regarded as an exemption. But an error occurring in filing the usual affidavit, a tax was finally imposed, which caused the application for relief. The opinion of the attorney general, to whom the matter was referred, was adverse to the construction of the statute contended for by the respondent, and was deemed authoritative by the legislature. In this court it can be regarded as of no more weight than its argument entitles it to; and it seems to be an effort of great ingenuity to explain away the force of the English language, and to infer intentions against a blunt and palpable provision of the statute.

The case referred to in 4 Hill's Reports, decides nothing that bears upon the present case. All the affidavits relied on were defective, and that was a sufficient reason for the judgment of the court. The dicta and suggestions are consonant, to a certain extent, as might be expected, with the opinion of the attorney general made to the legislature as before stated; but the case itself decides nothing that affects the respondent here.

The Utica Cotton Manuf. Co. v. The Supervisors of Oneida.

III. The appellants were properly charged with costs. Their legal duty was clear. By admitting the affidavit of the respondent, they exhausted all their discretion in the matter, and had no right to impose the tax. Even if they were disposed to doubt the policy of the exemption, there still was the law before them to dispel every doubt as to the fact of the exemption in a legal view. By imposing the tax, and attempting to collect it, they compelled the respondent to seek a remedy. He should not suffer for their error or wilfulness, and be at the expense of that remedy. They should be charged with it.

*Charles Tracy*, in reply. It is true, as the respondents' counsel states, that the first exemption from taxes given to manufacturing companies, was granted in 1817. But that exemption contained a discrimination in favor of personal estate, and against lands, nearly like the one now in force. The building, the machinery, and the manufactured wares were exempt; but the land was always subject to taxation. The exemption did not cover the water right, nor even the site of the factory proper. It was merely an exemption of personal estate, in the broadest sense of the terms, including those erections and fixtures which become personal property at the will of the proprietor; and left the land proper to be taxed in all cases. This act does not name incorporated companies; but the supreme court held that all corporations were included in the term " persons," and liable to the operation of the act. (*The People* v. *Utica Ins. Co.*, 15 *John*. 382.)

In 1823 an act " for the assessment and collection of taxes" was passed; (*Laws of* 1823, *p.* 390;) and it was subsequently held, by the supreme court, to be an abrogation of the act of 1817, and to leave manufacturing companies liable to taxation. (*Columbian Manuf. Co.* v. *Vanderpoel*, 4 *Cowen*, 557.) The 15th section of this act provided that on paying 10 per cent. of the profits, any incorporated company might be exempted from the tax on its personal estate; but left the real estate to the operation of the general laws on the subject of taxation.

The act of 1825 touches the question of exemption, in terms

not free from doubt or ambiguity.    On filing an affidavit of a
certain kind, these manufacturing corporations "shall not be
liable to *taxation pursuant to the provisions of this act."*
(*Laws of* 1825, *p.* 375, § 7.)    What is meant by "taxation pur-
suant to the provisions of this act?"    The statutes for the as-
sessment and collection of taxes are not reduced into this act,
not compiled with it, nor in any manner repealed, or impaired,
by it.    Those statutes made all lands of these companies subject
to taxation.    The passage in question, therefore, may be fairly
construed to express an exemption of personal estates alone.
Indeed, such an interpretation is the only one that can make
any sense of the final part of the passage above quoted.    The
result of this examination is, that the lands and real estate of
manufacturing companies always were subject to taxation, and
were not within the exemptions.

As to the views of the revisers.    Their various notes on title
2 and title 4 show a purpose of distinguishing between the real
and personal estate of manufacturing companies, for the purpose
of admitting an exemption of the personal at the place where
the company has its office, and retaining a local tax on the real
at the places where it may be situated.    (*See* 3 *R. S.* 2*d ed.*
496, 499, 500.)

As to the costs.    The respondents' counsel goes beyond the
bill when he styles the behavior of the supervisors wilful.    Nor
can the board of supervisors be charged with acting upon a
hasty impression, or counter to good advice, when they are sus-
tained by a strict and just analysis of the statute, and the au-
thoritative expositions of the supreme court, the attorney general,
and the legislature itself.

THE CHANCELLOR.    It is a matter of course to give costs to
a complainant, upon overruling a demurrer to his bill; unless
there is something very special to take the case out of the gen-
eral rule.    And if it were not so, an appeal will not lie for the
granting or refusing interlocutory costs which are in the discre-
tion of the court.

The only question worthy of consideration in this case, there-

fore, is whether the real estate of this corporation was liable to taxation, if it was lying entirely idle so as to produce neither rents nor income. That question depends upon the construction which is to be given to a great number of provisions contained in the chapter of the revised statutes relative to the assessment and collection of taxes; which, in connection with previous legislation, I will now consider.

It will be seen by referring to the act of April, 1823, for the assessment and collection of taxes, (*Laws of* 1823, *p.* 395, § 14, 16,) that previous to the revised statutes, the real estate owned by *joint* stock corporations, wherever situated, as well as their personal estate, was to be assessed and taxed in the town or ward where the office, or place of business of the company, was located. And that the amount of the town and county tax, when collected, was to be apportioned among the several counties of the state, in proportion to the stock held by individuals residing in such counties respectively. By the fifteenth section of the act of April, 1823, any such corporation was to be permitted to commute for the tax upon its *personal* property, that is, upon the amount of the capital held by individuals, exclusive of what was vested in real estate, by paying ten per cent. upon the dividends, profits, or income of the company. That section, however, was repealed by the amendatory act of April, 1825; and a new provision was substituted, allowing turnpike, canal, bridge, and manufacturing companies, to commute by paying five per cent. upon all of their profits and income; provided that income should not exceed five per cent. upon the capital stock of the company. Then came the provision exempting such corporations from taxation altogether, upon the production, to the board of supervisors, of an affidavit showing, to the satisfaction of that board, that the corporation was not in the receipt of any profits or income from its property. That provision, in the connection in which it then stood, must have been intended to exempt the corporation from taxation both upon its real and its personal property. But whether it then meant *net* income, so as to entitle the corporation to exemption if its expenditures and losses during the previous year had exceeded its receipts, or only

to exempt it where there were no rents or profits of its real or personal estate, it is not necessary now to inquire or consider.

The revised statutes, subsequently passed, adopted somewhat different principles in the taxation of corporations, with the exception of bridge, turnpike, and canal companies, as to the place where the real estate of the corporation should be taxed. And the provision of the previous statute, requiring the taxes upon corporations to be paid to the state treasurer, and to be distributed among the several counties in which the stockholders resided, was also abolished. That this change in the preexisting laws was deliberately and intentionally made, by the legislature, will be seen by referring to the report of the chapter relative to the assessment and collection of taxes, as originally made by the revisers. That chapter was drawn in conformity with the previous laws, requiring the real as well as the personal estate of corporations, which were liable to taxation upon their capitals, to be assessed in the town or ward where the principal office or place of business was situated. And it provided for the payment of the tax to the state treasurer, to be apportioned among the different counties in which the stockholders resided. (*See Rev. Rep. tit.* 2, § 6; *and Idem, tit.* 4, § 23 *to* 27.) But in conformity with the suggestion of the revisers, in their note to section six of the fourth title of that chapter, the legislature amended the sixth section of the second title, and passed it in the form in which it now appears in the revised statutes. And they also struck out the last five sections of the fourth title, which provided for a distribution of the taxes, upon joint stock corporations, among the several counties in which the stockholders should reside. The sixth section of the first title, as amended and passed, provides that " the real estate of all incorporated companies *liable to taxation*, shall be assessed in the town or ward in which the same shall lie; in the same manner as the estate of individuals." It also provides for the assessment of the personal estate of all corporations, liable to taxation on their capitals, in the town or ward where their principal place of business or office is located. And a special provision is made, in the last clause of this section, as to the place

where the real as well as the personal estate of bridge, canal, and turnpike corporations shall be assessed. What is meant by the real estate of a corporation, and what by its personal estate, in this chapter of the revised statutes, is clearly defined by the second and third sections of the first title. (1 *R. S.* 387.) Its personal estate, as there defined, *is only that portion of its capital* which is not invested in real estate. But the capital of a corporation embraces the whole of its stock paid in or secured to be paid; whether it is invested in real or in personal property. The principle of the revised statutes, on the subject of the taxation of corporations, appears to be to tax the real estate, except as to canal, turnpike, and bridge companies, upon its actual *value,* and for the benefit of the inhabitants of the town and county where it is situated, in the same manner that the property of individuals is taxed ; and to tax the residue of its capital, after deducting the *cost* of its real estate, as personal property, for the benefit of the inhabitants of the town and county where the financial concerns of the corporation are carried on.

To ascertain what the expression, *real estate liable to taxation,* in this sixth section of the second title of the tax law, means, we must examine other provisions contained in the same chapter. The first section of that chapter commences with a general declaration that all lands, and all personal estate, whether owned by individuals or corporations, shall be liable to taxation; subject to the exemptions thereinafter specified. (1 *R. S.* 387.) And among the exemptions specified in the fourth section of the first title, is the real estate of colleges, academies, and seminaries of learning, and other literary and charitable corporations therein mentioned ; and also the *personal* estate of every incorporated company, not made liable to taxation upon its capital by the fourth title of that chapter. None of these exemptions embrace the real estate of joint stock corporations, which derive a profit or income from their capitals, or otherwise. And upon this, the counsel for the appellants insist that the ninth section of the fourth title of this chapter of the revised statutes, could not have been intended by the legislature to exempt the real estate of such corporations from taxation, although they derived

no profits or income whatever from their real or personal estates. I have also endeavored to bring my mind to the same conclusion. And I regret that I have not been able to do so. For I cannot discover any principle of justice or equity which should exempt from taxation, the unproductive property of stockholders in a joint stock corporation that is not equally applicable to the unproductive real or personal estate which the same persons, or others, may hold in their own names as individuals. Why the revisers extended the exemption from taxation in certain cases to all corporations, which by the previous law was confined to a very few that were then deemed favorites of the public, is not explained in the notes to their report. But that they had thus extended such exemption was distinctly stated in the note to the ninth section of the fourth title; in which section that exemption is found. The legislature, therefore, adopted this change in the law with a full knowledge of the fact that such a change was intended to be made. And the directions of that section are so plain and positive that I cannot doubt that the legislature, as well as the revisers, must have intended to exempt the real as well as the personal estate of the corporation from taxation; provided a satisfactory affidavit was presented to the board of supervisors of the county in which such property was assessed, showing that the company was not in the receipt of any income or profits whatever, either from its real or its personal estate. For the section expressly directs, that if such affidavit is made and filed, with the clerk of the board, within the time prescribed, *the name of the corporation shall be stricken out of the assessment roll, and no tax shall be imposed upon it.* This direction to strike the name of the corporation from the assessment roll, when taken in connection with the sixth and seventh sections of that title, appears to render it impossible for the board of supervisors to tax either its real or personal estate; unless they wholly disregard the positive injunctions of the statute. For the sixth and seventh sections require the name of the corporation to be inserted in the first column of the assessment roll; its real estate situated in the town or ward in which the assessment is made, in the second column; the actual value of such real estate in

the third column ; and the part of its capital which is liable to taxation as personal property, in the fourth column. And if the name of the corporation is stricken from the first column, neither the value of the real estate as specified in the third, nor the part of its capital which is assessed as personal estate and set down in the fourth column, can be taxed to the corporation. Hence the board of supervisors, in the present case, found it necessary, in order to carry into effect their construction of the statute, to disobey the direction of the legislature to strike the name of the corporation from the assessment roll.

I have not, in the examination of this case, had access to the report of the judiciary committee of the senate, or the report of the former attorney general upon this question, in the case of the Black River Cotton and Woollen Manufacturing Company. But in reference to the act for the relief of that company, it is sufficient to say, the corporation had not taken the necessary steps to entitle it to exemption, either as to its real or personal property. And as there was neither justice nor equity in the principle which would have exempted any of the property of the corporation from taxation, when property of the same kind belonging to individuals was made to bear its portion of the public burthens, the legislature had a perfect right to refuse to exempt the real estate ; and would have done better justice if it had also refused to exempt the personal estate. For manufacturing companies are not taxed upon the nominal amount of their capitals paid in, but only upon the actual value of their real and personal estates. (1 *R. S.* 416, § 6, 7.) And the persons who own stock in such corporations are not taxable as individuals for the value of the stock held by them. (*Idem,* 388, § 7.) It may also be proper to say, that upon the construction which was put upon the section of the revised statutes now under consideration, in the recent case of *The People* v. *The Supervisors of Niagara,* (4 *Hill's Rep.* 20,) probably very few, if any, of these manufacturing companies were entitled to any exemption from taxation, except the right to commute for five per cent. upon their net income. For most of them have real estate which must produce some rent or income to the corpora-

The Utica Cotton Manuf. Co. *v.* The Supervisors of Oneida.

tion, even if the company is not engaged in manufacturing. And to render the affidavit satisfactory to the board of supervisors, they should require it to be so drawn as to leave no doubt upon their minds that the real, as well as the personal estate of the company, is wholly unproductive; so that it yields neither rents nor income, which can be received by the corporation or its agents.

In the present case, the bill avers that the affidavit produced was satisfactory to the board; and that no objection was made either to its form or its sufficiency. The language of the affidavit is as broad as the provision of the statute, and upon this demurrer to the bill, I am bound to presume the supervisors were satisfied the corporation had received no rents or profits from its real estate, nor any income from its personal property, within the year. And if they supposed the deponent had mistaken the law or the facts, in making the affidavit, they should have suggested it at the time; so that the matter might be explained by a supplemental affidavit. The conclusion at which I have arrived, therefore, is that the board of supervisors erred in refusing to strike the name of the corporation from the assessment roll, and in imposing a tax upon any part of its property.

No question was raised by the counsel for the defendants as to the jurisdiction of the court. I have not, therefore, considered the question whether this is a proper case of equitable cognizance, or whether the complainants had a perfect remedy at law, by mandamus, to compel the supervisors to strike the name of the corporation from the assessment roll.

The decretal order appealed from must be affirmed with costs.