Albany and West Stockbridge Railroad Co. *v.* Town of Canaan.

[ALBANY SPECIAL TERM, February 22, 1853. *Harris*, Justice.]

———————◇———————

THE ALBANY AND WEST STOCKBRIDGE RAILROAD COMPANY *vs.* THE TOWN OF CANAAN, and ALBERT FORD, collector, &c.

It is the duty of assessors to estimate and assess that section of a railroad which lies within their town, at its full and true value. In ascertaining this value, the superstructure and fixtures, and every thing annexed to the land is to be taken into the account. But whether the stock of the company is above, or below, par; or whether the business of the road is productive or unproductive, are questions with which the assessors have nothing to do

So long as the assessors confine themselves within the above rule, however grossly they may err in their estimate, their valuation is conclusive. Like the verdict of a jury, the amount is not to be questioned.

The tax based upon the assessment is like a judicial sentence, and can only be attacked for fraud, or an excess of jurisdiction.

But when assessors, after estimating and assessing that part of a railroad lying within their town, with the superstructure and erections thereon, at its full and true value, proceed to add any thing to the valuation, by reason of the increased cost of the road, or on account of its income or productiveness, so far they transcend their authority, and their act is void.

Where the property assessed is a railroad, the omission of the assessors to state the number of acres of land assessed to the company in their town, is not such a defect in their proceedings as to deprive them of jurisdiction.

In such a case *it seems* the requirement of the statute will be complied with by stating the number of miles of road, without adding the *quantity* of land.

MOTION to dissolve injunction. The complaint stated that the plaintiffs were the owners of a railroad running from the Hudson river to the westerly line of the state of Massachusetts, through the towns of Greenbush, Schodack, Kinderhook, Ghent, Chatham and Canaan, about *thirty-eight* miles in length;

that the length of that part of the road in Canaan was nine miles; that the quantity of land occupied by the plaintiffs in that town was 90 acres; that the value of land adjoining the railroad did not exceed $50 per acre, and that the erections, superstructure and fixtures upon the road in that town did not exceed $45,000 in value. It was further stated, that the real estate of the plaintiffs, in Canaan, consisting of the said nine miles of railroad, had been assessed, by the assessors of that town, at the sum of $300,000! whereas the actual aggregate value of the land, with the erections, superstructure and fixtures did not exceed the sum of $50,000. In the assessment roll, the length of the road was given, but not the *quantity* of land, or the value per acre. Previous to the assessment, the plaintiffs had delivered to the assessors a statement verified by the affidavit of the president of the plaintiffs' corporation, to the effect that the land owned by the plaintiffs in the town of Canaan consisted of 90 acres, which, exclusive of superstructure and fixtures thereon, were of the value of about $44 per acre; and that, from the best means of information in the power of the officers of the plaintiffs' company, the actual value of such real estate, including the superstructure and fixtures thereon, estimated at the same rate as other real estate was estimated in the assessment in that town, did not exceed the sum of $33,960. The assessors met to review their assessment on the third Tuesday of August, when an agent of the plaintiffs appeared before them and requested them to reduce the assessment of the plaintiffs' road to the amount specified in the statement which had been delivered to them. This they refused to do, stating, at the same time, as the complaint alleged, that they had arrived at the sum of $300,000, by valuing the road at the *cost* thereof, and estimating *the income* and *productiveness thereof*.

In the same assessment roll, the Hudson and Berkshire railroad company, whose road runs about the same distance in the town, was assessed at $40,000, and it was alleged that the assessors, when asked why the plaintiffs' road was assessed at a rate so much higher, when the two roads were of about the same

length in the town, and the land and superstructure of each were of about the same value, stated, in substance, that the Hudson and Berkshire railroad was not a *paying* road, whereas the plaintiffs' road was paying a good interest, and its capital stock was above its par value.

The complaint further alleged, that the assessors, in order to make up the valuation of $300,000, as contained in the assessment roll, *unlawfully and without having any jurisdiction so to do, included therein the sum of $250,000 on account of the capital stock of the plaintiffs' company being above its par value, and on account of the prosperity and productiveness of the road;* that this sum was included in the assessment through the mistake of the assessors as to their duties in making such assessment, or a willful and corrupt design on their part to subject the plaintiffs to unjust, illegal and oppressive taxation for the benefit of themselves and the other taxable inhabitants of the town. It was then alleged that the assessment roll having been delivered to the board of supervisors, a tax of $447,57, was set opposite to the assessment of $300,000, and the usual warrant for the collection thereof delivered to the collector, who was proceeding to collect the same; that the proportion of the tax founded upon the illegal valuation of $250,000 was the sum of $372,98; that the whole amount of the tax to be collected in the town, was $1614,08; the whole value of all the real estate in the town as assessed, was $996,210, and the whole amount of personal, $85,630.

The plaintiffs asked that the collection of all that part of the tax founded upon the illegal and unauthorized valuation of $250,000 might be restrained by injunction; or, if this remedy was impracticable, that the amount of such illegal tax be adjudged to be a valid and subsisting debt to be enforced against the town, with interest.

The material facts stated in the complaint were verified by the affidavit of Henry Gray, the superintendent of the plaintiffs' road. Upon these papers an injunction was granted restraining the collector from proceeding to collect more than $74,59 of the tax against the plaintiffs, until the further order

of the court. The defendants moved to dissolve the injunction upon the affidavits of two of the assessors, and the supervisor and the collector of the town. The assessors swore that they believed, when they made the assessment, and still believed, that $300,000 was the fair and true and actual value of that part of the plaintiffs' road situate in the town of Canaan, and that they would appraise the same at that sum in payment of a just debt due from a solvent debtor. They denied that they assessed the plaintiffs' real estate at the cost thereof, or by estimating its productiveness. On the contrary, they averred that they assessed it at its real value, and according to the statute, from the best sources of knowledge and information within their power. They denied having made to the plaintiffs' superintendent the statements or admissions set forth in the complaint. They also denied that they ever stated, in substance, that they had arrived at the sum of $300,000 by valuing the road at the cost thereof and estimating its income and productiveness. They denied that they included the sum of $250,000 in the assessment on account of the capital stock of the plaintiffs being above par, or on account of the prosperity or productiveness of the road. And, finally, they alleged that in making the assessment, and preparing the assessment roll, they endeavored, in all respects, to conform to the laws upon that subject, and they made the assessments in conformity therewith, and annexed to such roll and subscribed and took the oath required by law.

*H. Harris*, for the plaintiffs.

*H. Hogeboom*, for the defendants.

HARRIS, J. It was the duty of the assessors to estimate and assess that section of the plaintiffs' road within their jurisdiction, "at its full and true value." In ascertaining this value, the superstructure and fixtures; every thing annexed to the land, was to be taken into the account. But whether the stock was above or below par, or whether the business of the road

was productive or unproductive, were questions with which the assessors had nothing to do. The true rule is stated in *The Albany and Schenectady Railroad Company* v. *Osborn*, (12 *Barb.* 223.) " They are simply to ascertain the value of the land, and of the erections and fixtures thereon, irrespective of the consideration whether the road is well or ill managed, or whether it is profitable to the stockholders or otherwise."

The valuation of the assessors, so long as they confine themselves within this rule, however grossly they may err in their estimate, is conclusive. Like the verdict of a jury, the amount is not to be questioned. The tax based upon the assessment is like a judicial sentence, and can only be attacked for fraud or excess of jurisdiction. The legislature has provided no appellate tribunal to correct any errors which the assessors or board of supervisors may make, so long as they act within their prescribed jurisdiction. But the assessors are officers created by statute. Their powers are defined by the law which creates them. Though, while acting within their authority, their acts are unquestionable, every thing they do beyond what is prescribed by law is void. When, therefore, besides estimating and assessing the nine miles of the plaintiffs road lying in the town of Canaan, with the superstructure and erections thereon, " at its full and true value," they proceeded, if so they did, to add any thing to the valuation, by reason of the increased cost of the road, or on account of its income or productiveness, so far they transcended their authority, and their act is void. If, as the plaintiffs allege, the assessors have increased their valuation $250,000, for the reason that the road is doing a profitable business, and the stock of the company is worth more than par, such increased valuation is not the less an excess of jurisdiction because it is added to the appraised value of the real estate itself, and the whole amount inserted in the assessment roll, as the assessors' valuation of the real estate. It may be more difficult to discriminate between " the full and true value of the real estate," and the amount added upon other grounds. Indeed, in most instances, this will be impossible. But when, as in the case of *The Albany and Schenectady Railroad Company* v.

*Osborn*, the assessors frankly avow the basis upon which they proceeded in making their assessment, so that the court can distinguish between what is legal and what is unauthorized, the assessment, to the extent that the assessors have gone beyond their authority, may be declared void. (*Bank of Utica* v. *The City of Utica*, 4 *Paige*, 399. *Utica Cotton Manufacturing Co.* v. *Supervisors of Oneida*, 1 *Barb. Ch.* 432. *The Mohawk and Hudson Railroad Co.* v. *Clute*, 4 *Paige*, 384. *Farmers' Loan and Trust Co.* v. *The Mayor, &c. of New-York*, 7 *Hill*, 261.) In this case, assuming the facts to be as stated in the complaint, I have no doubt that the assessment, in respect to the sum of $250,000 added by the assessors to the "full and true value," of that section of the road within their town, is illegal and void. The assessors had no more authority to increase their valuation because the road was productive, than they would have to tax the plaintiffs for a valuable franchise, or for capital expended in providing conveniences at the termination of their road. The difficulty, in all such cases, is, not that the act of the assessors, when they exceed their powers, is not illegal, nor that the courts have not authority to declare their illegal acts void, but in ascertaining the basis upon which the assessment was actually made.

Here, there are two railroads running near each other, and in the same direction, through the town. The distances they run in the town are nearly equal. Each has, it is said, a single track. It would seem probable that the cost of one, did not vary greatly from that of the other. By what arithmetic, then, the assessors, while confining themselves within the rule of estimate given them by the legislature, could assess one road at $300,000, and the other at $40,000, I confess I am unable to see. And yet this has been done, and the assessors insist they have done it according to law. They swear that, when they made the assessment, they believed, and that they yet believe, that the fair and true and actual value of that part of the plaintiffs' road situated in their town was, and is, $300,000. If this be so, the plaintiffs must fail in their action. Though it could be demonstrated that the assessors had erred, and that

egregiously, in their judgment, no tribunal has been endowed with power to correct such error. Like the verdict of a jury, if founded on correct principles, it must stand, however much its conclusions may surprise us. The affidavits read upon this motion fully deny all the allegations, by which the plaintiffs showed themselves entitled to the injunction. Of course, whatever may be the final result of the action, the plaintiffs are no longer entitled to restrain the collection of the tax.

Prior to the act of 1851, (*Sess. Laws*, 1851, *p*. 332,) the party liable to taxation might control the discretion of the assessors in fixing a valuation upon his property, by his own affidavit. (1 *R. S.* 392, § 15.) But now, although it is their duty to examine the person who applies to have the assessed value of his property reduced, the assessors are at liberty to fix the value at such sum as they deem just, notwithstanding such examination. There is, therefore, no longer any check upon the power of assessors in fixing the value of taxable property, so long as they *profess* to follow the rule of valuation prescribed by statute; unless, indeed, the assessed value be so outragously disproportioned to the real value as to furnish clear evidence of corruption or fraud. Then, as in other cases of fraud in judicial proceedings, a court of equitable jurisdiction might interfere. (*See Huggins* v. *King*, 3 *Barb. S. C. Rep.* 616.)

The omission of the assessors to state the number of acres of land assessed to the plaintiffs in their town, was not such a defect in their proceedings as to deprive them of jurisdiction. In respect to such property as the plaintiffs' road, I am inclined to think the requirement of the statute may be satisfied, imperfectly perhaps, by stating the number of miles of road, without adding the *quantity* of land. But, at most, it was an irregularity, and, therefore, could not destroy the validity of the assessment. (*See Torrey* v. *Millbury*, 21 *Pick.* 64, cited in *Van Rensselaer* v. *Witbeck*, 7 *Barb.* 140.)

The injunction must be dissolved. The costs of the motion should abide the event of the action.

[ALBANY SPECIAL TERM, February 22, 1853. *Harris*, Justice.]