HUNTER (WALKER v.). See Case No. 17,-072.

HUNTER (WILSON PACKING CO. v.). See Case No. 17,852.

HUNTERS (BRYANT v.). See Case No. 2,-068.

HUNTINGDON (MORRIS v.). See Case No. 9,831.

## Case No. 6,911.

HUNTINGTON et al. v. CENTRAL PAC. R. CO.

[2 Sawy. 503;[1] 1 Am. Law T. Rep. (N. S.) 94.]

Circuit Court, D. California. Jan. 26, 1874.

TAXATION—RAILROAD EXEMPTION—VOID TAX ASSESSMENT—RAILROADS, HOW TAXED—SEPARATE ASSESSMENTS — TAX DEED PRIMA FACIE EVIDENCE OF TITLE—INJUNCTION A PROPER REMEDY.

1. The Central Pacific Railroad is not exempt from taxation by the state of California, on the ground that it is an instrumentality created in pursuance of acts of congress, and employed by the national government for transportation of the mails, armies of the United States, munitions of war, etc.

2. An assessment of a tax not made in the mode or on the principle prescribed by the statute, is void.

[Cited in Tilton v. Oregon Cent. Military Road Co., Case No. 14,055.]

3. Under the statute of California, a railroad must be taxed as real estate, and the portion situate in each county must be assessed in said county as so much land, like the adjoining lands, without reference to its connections, or the uses to which it is put, and must be assessed at its "cash value," which is "the amount at which the property would be appraised, if taken in payment of a just debt due from a solvent debtor."

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

4. The land and improvements thereon, must be assessed separately like other real estate, and an assessment not made in the mode and on the principle stated, is void.

5. Under the statute of California, a tax deed is prima facie evidence of the regularity of all proceedings resulting in the deed, and is, therefore, prima facie evidence of title in the grantor. Such a deed executed in pursuance of a void sale, casts a cloud upon the title.

[Cited in Minturn v. Smith, Case No. 9,647.]
[Cited in Arrington v. Liscom, 34 Cal. 366.]

6. A court of equity will enjoin a sale for taxes, when the assessment is void, and the deed given in pursuance of the sale would cast a cloud upon the owner's title.

[Cited in Northern Pac. R. Co. v. Carland, 5 Mont. 146, 3 Pac. 134; Hauswirth v. Sullivan, 6 Mont. 203, 9 Pac. 798.]

[7. Cited in Donohoe v. Mariposa L. & M. Co., Case No. 3,989, to the point that the dismissal of the original bill before a hearing would doubtless carry the cross bill with it as a part of the suit.]

Bill in equity [by Collis P. Huntington and others] to restrain the sale of the Central Pacific Railroad for the taxes levied in the various counties through which the said railroad extends, for state and county purposes for the year 1872–3.

McCullough & Boyd and S. W. Sanderson, for complainants.

Robert Robinson, for Central Pac. R. Co.

J. Love, Atty. Gen., and the several district attorneys for the counties of Santa Clara, Alameda, San Joaquin, Sacramento, Placer and Nevada, for other defendants.

Before SAWYER, Circuit Judge, and HOFFMAN, District Judge.

BY THE COURT (SAWYER, Circuit Judge). There are two grounds upon which the application for an injunction is rested. First, on the ground that the Central Pacific Railroad is an instrumentality constructed in pursuance of acts of congress, and employed by the national government in the exercise of its constitutional powers in providing for the transportation of the mails, the armies of the United States, munitions of war, etc., and as such instrumentality of the general government, exempt from state taxation. Secondly, that the said taxes have not been assessed in the mode, or upon the principles prescribed by the statute, and for that reason the assessment is void.

The first ground has recently been disposed of adversely to the complainants by the supreme court of the United States, in the case of Union Pac. R. Co. v. Peniston (decided at the present term) and it requires no further consideration. 18 Wall [85 U. S.] 5.

As to the second ground; section 3617 of the Political Code of California, defines the term "real estate," as used in the statute for the purposes of taxation, as follows: "First, the term 'real estate' includes—1. The ownership of, claim to, possession of,

or the right to the possession of land. * * * 3. Improvements. Second, the term 'improvements,' includes—1. All buildings, structures, fixtures, fences and improvements erected on, upon, or affixed to the land."

The term "real estate," then, includes both the land and the improvements on the land, and the Central Pacific Railroad is real estate made up of both these classes. First, the ownership, etc., or right to the possession of the land upon which the track is laid, location of engine-houses, stations, water tanks, etc.—in other words, the right of way, etc., and, secondly, "Improvements," as engine-houses, station-houses, fences, water-tanks, ties, rails, etc., which are either "buildings. structures, fixtures, fences," or, "improvements erected upon or affixed to the land."

So, also, the interest of the company in the railroad is real estate under the general principles of the law, without reference to the statute, as held after a full discussion of a similar question by the supreme court of California, in North Beach & M. R. Co.'s appeal in Re Widening Kearny St., 32 Cal. 505.

Section 3650 of the Political Code, provides that: "The assessor must prepare an assessment book with appropriate headings, alphabetically arranged, in which must be listed all property within the county. and in which must be specified in separate columns under the appropriate head: 1. The name of the person to whom the property is assessed. 2. Land by township, range, section, or fractional section; and when such land is not a congressional division or subdivision. by metes and bounds, or other description sufficient to identify it, giving an estimate of the number of acres, locality, and the improvements thereon. 3. City and town lots, naming the city or town, and the number, block—according to the system of numbering in such city or town, and improvements thereon. 4. All personal property, showing the number. kind, amount and quality; but a failure to enumerate in detail such personal property does not invalidate the assessment. 5. The cash value of real estate, other than city or town lots. 6. The cash value of improvements on such real estate. 7. The cash value of city and town lots. 8. The cash value of improvements on city and town lots."

Section 3651 gives the form of the assessment books to be used, ruled into separate columns, one column for each particular specified in the preceding section with the appropriate headings, among which is one column with the heading, "Value of real estate other than city or town lots," and immediately following, another headed, "Value of improvements thereon." There is no special provision of the statute for a different mode of assessing railroads. There is no provision at all for assessing railroads,

as railroads. The only provision pointing out any exceptional mode of assessing the property owned by railroad companies relates to the rolling stock, which is as follows, to wit:

"Section 3663. Where the railroad of a railroad corporation lies in several counties, its rolling stock must be apportioned between them, so that a portion thereof may be assessed in each county, and each county's portion must bear to the whole rolling stock the same ratio which the number of miles of the road in such county bears to the whole number of miles of such road lying in this state."

In relation to equalization of assessments by the state board of equalization, section 3693 provides: "'When the property is found to be assessed above or below its full cash value, the board must add to or deduct from. the valuation of: 1. The real estate; 2. Improvements upon such real estate; 3. * * * Such per centum respectively as is sufficient to raise or reduce it to the full cash value."

Under these provisions of the law, railroads must be assessed like any other real estate. They fall clearly within the statutory definition of real estate. The lands and the improvements on them must also be assessed separately, and the land, not being a congressional division or subdivision, must be described by "metes and bounds, or other description sufficient to identify it, giving an estimate of the number of acres, locality, and the improvements thereon." Unless so assessed, the state board cannot equalize the assessment in the mode required by section 3693, which must also equalize each separately by adding to or deducting "from the valuation of: 1. The real estate; 2. Improvements upon such real estate." This may be an unsatisfactory way of assessing railroads, but if so, the wisdom of the legislature has so provided—probably on constitutional grounds as to equality and uniformity—and the mode must be pursued, or the assessment will be void. It cannot be said that this was inadvertently done, for railroads were not overlooked, the mode of assessing the rolling stock having been carefully provided for. The bill alleges that the several county assessors, "in making their assessments, did not assess the right of way separately as land consisting of so many acres of such or such a value per acre, nor did they describe it by reference to township, or range, or section, or fractional section, or by metes and bounds, or by other description, except as hereinafter stated, nor did they assess separately the improvements, or iron and ties constituting said super-structure, as improvements of such or such a value, according to the cash value of said ties and iron, nor did they value said lands at their cash value as lands, or as of the same value as other adjoining lands of like

·quality. On the contrary, they assessed said right of way and superstructure together, as constituting one thing, and described them as so many miles of railroad of such or such a value per mile, without regard to the width of the right of way."

And further: "That in ascertaining the valuation of said road, said assessors and board of equalization were not governed by the value of the land considered as land, and of the same value as adjoining lands of like quality, nor by the value of ties and iron considered as ties and iron, as new or old, or depreciated in value by use; but, on the contrary, they lumped said lands and superstructure, and considered them as one thing, and ascertained their value by taking into account the franchises of said company and their value, the cost of construction, fills, embankments, tunnels, cuts and snow-sheds, and the fact that said road extended from San José, in the state of California, to Ogden, in the territory of Utah—a distance of about eight hundred and seventy-five miles—and there formed a junction with the Union Pacific, and constitutes a part of a line of railroads extending from the Pacific to the Atlantic Oceans, and the amount of business transacted by said plaintiff on said road, and the profits derived by said plaintiffs therefrom; all of which, as complainants aver, was contrary to the rules prescribed by the statute of said state in such case made and provided."

This is certainly neither literally nor substantially, the mode of assessing prescribed by the statute; and, as the application is heard on the bill alone, the averments of the bill must be taken as true. Besides, the description is defective. It gives so many miles of railroad without regard to the width of the land occupied, or to any specific location. The bill shows that the land occupied varies in width from one hundred to four hundred feet, and that it has a superstructure of ties and iron rails forming a track for cars to run on, depots, stations, etc. The description adopted by the assessor, is no more definite than in Kelsey v. Abbott, 13 Cal. 616, 619, which was held by the supreme court of California to be insufficient, and the assessment consequently void. But we do not find it necessary to determine whether this defect is fatal. The assessment, as equalized by the state board set out in the bill, shows some curious results. The assessment as equalized in San Joaquin county is twice, and in Placer more than three times as much per mile as in Santa Clara and Alameda counties, and that of Placer county, two and one half times as great as in Nevada county. And the value of the rolling stock as equalized, is not apportioned according to the number of miles in each county. But we are not prepared to say that the court could remedy an erroneous or unequal assessment, provided

that it is made in the proper mode, upon the proper principle, and in other respects properly made. Doubtless, it could not. This assessment, in our judgment, has more radical defects. It is not made in the way prescribed by the statute. It is not only not formally, but is not even substantially such an assessment as the statute requires. The statute, for some wise reason, it must be presumed, expressly requires that the interest in the land, and the improvements "must" be separately assessed and separately equalized. This has not been done, and these assessments could not be separately equalized, because the board of equalization would have no data in view of the mode of assessment by which it could be determined what part had been assessed to the land, or what to the improvements.

In states where the statutes contain provisions similar to those in this state, defining real estate for the purposes of taxation, and as to the mode and principle of assessing real estate, as in New York, it has been repeatedly held that the railroads are taxable "as real estate in the several towns in which such real estate is to be taxed upon its actual value at the time of the assessment, whether that value is more or less than the original cost thereof;" that "the assessors are simply to ascertain the value of the land, and of the erection of fixtures thereon, irrespective of the consideration whether the road is well or ill-managed, whether it is profitable to the stockholders or otherwise. Such property is to be appraised in the same manner as the adjacent lands of individuals, and without reference to other parts of the railway." Mohawk & H. R. Co. v. Clute, 4 Paige, 395; Albany & S. R. Co. v. Osborn, 12 Barb. 225; Albany & W. S. R. Co. v. Town of Canaan, 16 Barb. 244. See, also, Sangamon & M. R. Co. v. Morgan Co., 14 Ill. 163; Tax Cases, 12 Gill & J. 117. Decisions under different statutes of course have no application.

The statute of New York, under which the decisions cited were made, gives a similar definition of real estate as that cited from the code of California, and provides that "all real and personal estate liable to taxation shall be estimated and assessed by the assessor at its full and true value, as they would appraise the same in payment of a just debt due from a solvent debtor." St. N. Y. (1851) 333. Section 3627 of the Political Code of California is substantially the same. It provides that "all property must be assessed at its full cash value;" and section 3617 provides that "the term 'full cash value,' means the amount at which the property would be appraised if taken in payment of a just debt due from a solvent debtor." And the assessor must ascertain "all the property in his county subject to taxation, and must assess such property to the persons who own, claim, have the possession or control thereof."

That is to say, the property in each county must be assessed in that county, without reference to property in any other county, and the value must be estimated at the amount at which that particular land and improvements thereon would be "appraised if taken in payment of a just debt due from a solvent debtor," if taken by itself out of its connections. For it is that portion only that can be taxed and that can be sold, in any given county. In adopting the provisions of the statute of New York, the construction before put upon the statutes by the courts of New York must be presumed to have been contemplated.

The bill alleges that the railroad and its appurtenances were not assessed or equalized upon that principle in any of the counties whose collectors are made parties; but that, on the contrary, they "lumped said lands and superstructure and considered them as one thing, and ascertained their value by taking into account the franchises of said company and their value, the cost of construction, fills, embankments, tunnels, cuts, and snow-sheds, and the fact that said road extends from San José, in the state of California, to Ogden, in the territory of Utah —a distance of about eight hundred and seventy-five miles—and there forms a junction with the Union Pacific, and constitutes a part of a line of railways extending from the Pacific to the Atlantic Ocean, and the amount of business transacted by said plaintiff on said road, and the profits derived by said plaintiff therefrom; all of which, as complainants aver, was contrary to the rules prescribed by the statute of such state in such cases made and provided." If this is so—and, for the purposes of this motion heard upon the bill alone, the allegation must be taken as true—the assessment was made in direct violation of the provisions of the statute.

Upon the hypothesis alleged many elements were considered which the statute does not contemplate. In addition to other improper elements considered, such an assessment would be equivalent to taking the valuation of an undivided part of the whole road extending entirely across two states and a part of a territory, and in principle like the case of Sangamon & M. R. Co. v. Morgan Co., 14 Ill. 163. It would be taking into consideration value given to it by its connection with other property outside of the said counties, and even outside the state in which the assessments were made; or, in other words, assessing the entire road, including property outside of the several counties and state where the assessments were made, and then taking a proportionate part of the whole, corresponding to the number of miles of road situated in the particular county where the assessment is made. If the assessment had been made in the mode, and upon the principle prescribed by the statute without actual fraud, it would,

doubtless, be incompetent for the court to inquire into any error of judgment in ascertaining the value, however gross it might be. The law has devolved upon the assessors the sole duty of determining the amount, and upon the boards of equalization the duty and power of equalizing, and their determination is final, provided they act in the mode and upon the principle which the statute requires. But they cannot depart from the mode or the principle prescribed, for when they do this, they act without authority. The court can only inquire as to whether they have pursued the statute. In this case, the allegations of the bill being taken as true, as they must be, as now presented, it is apparent that the assessment has not been made, or equalized in pursuance of the statute, either in the mode of assessment, namely, by assessing the land and improvements separately, or in the principle adopted for ascertaining the value. Section 3650 of the Political Code expressly provides for listing "all personal property, showing the number, kind and quality; but a failure to enumerate in detail such personal property does not invalidate the assessment;" and section 3807 provides that "when land is sold for taxes correctly imposed, as the property of a particular person, no misnomer of the owner, or supposed owner, or other mistake relating to the ownership thereof, affects the sale, or renders it void or voidable." Thus it is provided, that a failure to mention in detail personal property, or to name the true owner of real estate otherwise "correctly" assessed, shall not vitiate the assessment; but we find no saving clause to protect an assessment substantially defective by a failure to assess in the mode, as to assess the land and improvements separately, and upon the principle prescribed by the statute—such defects as now appear to exist in this assessment. The maxim "expressio unius est exclusio alterius" would seem to be peculiarly applicable.

It has often been held by the supreme court of California, and the courts of other states, that taxes and street assessments not assessed in strict accordance with the provisions of the statute are void. The statute confers the power, and it affords the measure of the power. Smith v. Davis, 30 Cal. 537; Kelsey v. Abbott, 13 Cal. 618; Moss v. Shear, 25 Cal. 38; Blatner v. Davis, 32 Cal. 329; Taylor v. Donner, 31 Cal. 482; People v. Sneath, 28 Cal. 615; Falkner v. Hunt, 16 Cal. 167, 172, 173. See, also, Shimmin v. Inman, 26 Me. 228; Willey v. Scoville, 9 Ohio, 43; Blackw. Tax Titles, 176.

In our judgment, the several assessments in question have not been made in accordance with the provisions of the statute in the particulars indicated, and that on those grounds they are void.

But the mere fact alone that the tax levied is void, affords no ground for equitable relief. Are there any other circumstances al-

leged which present a proper case for equitable cognizance? The bill alleges that the several tax collectors, who are defendants, threaten to collect, and will collect the said several taxes by forced sale of the said railroad, fixtures and appurtenances, unless voluntarily paid by said Central Pacific Railroad Company; that they will sell the same and give certificates of sale and deeds to the purchasers, under the laws of the state; that said deeds will be conclusive evidence of the validity of said assessments, and the regularity of the proceedings thereon, and in that event the capital stock of said company, owned by defendant, will become valueless; or, if the said defendant, the Central Pacific Railroad Company, should pay said taxes to prevent said sale, the complainants will be deprived of a proper portion of dividends, etc. The Political Code provides for sales for taxes, and that certificates of sales, and deeds containing certain enumerated recitals, shall be given to the purchasers; and section 3786 provides that the deed so given shall be "primary evidence"—that is to say, prima facie evidence, or "that which suffices for the proof of a particular fact, until contradicted and overcome by other evidence." See Civ. Proc. 1833, that: "1. The property was assessed as required by law. 2. The property was equalized as required by law. 3. The taxes were levied in accordance with law. 4. The taxes were not paid. 5. At a proper time and place the property was sold as prescribed by law, and by the proper officer. 6. The property was not redeemed. 7. The person who executed the deed was the proper officer. 8. Where the real estate was sold to pay taxes on personal property, that the real estate belonged to the person liable to pay the tax."

"And conclusive evidence of the regularity of all other proceedings, from the assessment by the assessor, inclusive, up to the execution of the deed." Section 3787. That such a deed would cast a cloud upon the title, if nothing worse, there can be no doubt. It would only be necessary for the plaintiff to produce his deed to show title. It would then devolve upon the defendant to show affirmatively, by evidence dehors the deed, such fatal defects in the assessment as it is admissible to show under the provisions cited, the deed itself being conclusive as to other particulars; and this brings it within the test by which the question is determined whether a deed would be a cloud upon title, established in this state, by the decisions of the supreme court. "The true test, as we conceive, by which the question, whether a deed would cast a cloud upon the title of the plaintiff, may be determined, is this: Would the owner of the property in an action of ejectment, brought by the adverse party, founded on the deed, be required to offer evidence to defeat the recovery? If such proof would be necessary the cloud would exist; if no proof would be necessary no shade would be cast by the presence of the deed." Pixley v. Huggins, 15 Cal. 133, 134; Thompson v. Lynch, 29 Cal. 189; Hager v. Shindler, Id. 47; Arrington v. Liscom, 34 Cal. 365.

This test is also recognized by implication by the United States supreme court, in Hannewinkle v. Georgetown, 15 Wall. [82 U. S.] 548. It is only necessary to introduce the deed under the statute to make out a title. It is not necessary to introduce the record of the prior proceedings, which show the invalidity of the assessment. In such cases, the court will interfere by injunction to prevent a cloud being cast upon the title. The court will injoin the casting of a cloud upon a title in cases wherein the cloud itself, when cast, would be removed. Palmer v. Boling, 8 Cal. 388; Fremont v. Boling; 11 Cal. 380; Pixley v. Huggins, 15 Cal. 127; Hibernia S. & L. Soc. v. Ordway, 38 Cal. 681, 682; Shattuck v. Carson, 2 Cal. 588; Guy v. Hermance, 5 Cal. 73; Englund v. Lewis, 25 Cal. 337; Alverson v. Jones, 10 Cal. 9–11; Petit v. Shepherd, 5 Paige, 501. In Dows v. City of Chicago, 11 Wall. [78 U. S.] 112. where a bill was filed by a stockholder of the Union National Bank against the bank and the city, to restrain the collection of a tax levied upon the stock, the complainant alleged only the invalidity of the assessment, without any special circumstances of equitable cognizance. The bill was not sustained expressly on this ground. The bank filed a cross-bill, in which it alleged that a sale of the stock would subject it to a multitude of suits, etc. The court, in deciding the case, say in regard to the cross-bill filed by the bank: "Were it an original bill the jurisdiction of the court might be sustained on that ground. But as a cross-bill it must follow the fate of the original bill." This case is, therefore, authority in favor of the proposition that a bill alleging equitable circumstances of a similar character to those alleged in this bill, in addition to the invalidity of the tax, will be sustained. We think that an act that results in casting a cloud upon the title of real estate is an ordinary ground of equitable relief, and that this bill, *in addition to the invalidity of the tax,* shows special circumstances sufficient to justify an injunction. Let an injunction issue, restraining proceedings, in pursuance of the prayer of the bill, until further ordered by the court.