## PALMER v. BOLING.

Where a claim to a tract of land, under a Mexican grant, somewhere within a certain larger tract, was ascertained, and the land segregated by a survey, under a decree of confirmation by the U. S. Supreme Court: *Held*, that the land became immediately taxable, and that an assessment thereof will be presumed to have been made *after* the survey, where the time allowed by law for the assessment extended to a day four days after the survey.

The acts of the officer making the assessment must be presumed to be in conformity with law, until the contrary is shown.

APPEAL from the District Court of the Thirteenth Judicial District, County of Mariposa.

This was a proceeding to enjoin the tax-collector of Mariposa from selling, for taxes, a tract of ten leagues of land, known as the Fremont grant.

The facts, as averred in the bill, are briefly these :

The grant having been confirmed, giving to the claimant ten leagues of land, to be located within certain boundaries, a survey was made accordingly, and the ten leagues segregated. The survey was completed and approved, July 31st, 1855, four days before the expiration of the time allowed by law for the completion of the annual assessment, for State and county taxa-

tion. The assessor made his return within the time allowed by law, including a general assessment on the ten leagues of land claimed by Fremont, placing the value thereof at five hundred thousand dollars. The plaintiff avers himself to be the present owner of the land. In the Court below, a demurrer was filed to the petition, which was sustained by the Court, and the bill dismissed. Plaintiff appealed.

The case comes at this term, before this Court, on a re-hearing.

*Robinson, Beatty & Botts,* for Appellants.

The bill alleges, and the demurrer admits, that Fremont's claim was finally adjudicated on the twenty-seventh day of June, 1855, confirming to Fremont his title to ten leagues, generally within the hundred leagues described in the grant, and directing the Surveyor-General to survey and locate the claim within the limits described in the grant; this was done upon the thirty-first day of July, 1855. This was the first act of segregation. Before that day, Fremont was the owner of no particular foot of land in California. On that same day, the power of the assessor for the county of Mariposa ceased. The statute provides that, between the first Mondays of March and August of each year, the assessor shall assess all the real estate in his county, and although he has after-power to supply omissions, he has no authority to assess land that was not assessable on the thirty-first day of July. At any rate, it is admitted that this pretended assessment was made between March and August.

What is an assessment? It is an estimate of value made by an officer sworn to exercise his judgment, fairly and impartially. To value a tract of land, it is not too much to say, that two things must be known, the quantity and the quality. If, before the first day of August, the Mariposa assessor knew the quantity of Fremont's tract, he certainly could not know the quality, because, up to that day, it lay anywhere within a varied tract of a hundred leagues, one portion of it a barren waste not worth a cent an acre, another abounding in the richest ore.

The record discloses the fact that the sum of five hundred thousand dollars was assessed generally against the ten leagues of land claimed by Fremont, and not against the said ten leagues of land surveyed and located by the Surveyor-General on the thirty-first day of July, 1855. And yet is the land so surveyed and located that the sheriff threatens to sell. In other words, it is admitted that the sheriff is advertising a tax-sale of land that has never been assessed. Now, it is only by assessment that he obtains the right to sell. The recorded estimate of the assessor operates as a judgment in favor of the State against the owner, and constitutes a lien upon the land assessed, (§ 42 of the Revenue Act,) and the sheriff is then authorized to sell the land upon which the lien has attached, to pay the judgment in favor

of the State.' Without an assessment there can be no judgment, without a judgment there can be no lien, and without a lien there can be no sale.

It appears, in short, that whilst Fremont had nothing but an equitable right to have ten leagues of land within certain limits, located and set apart to him by the United States, the county assessor of Mariposa undertook to guess what the claim would probably be worth after it should be located. But a claim to land, as distinct from the land itself, cannot form the subject of taxation—otherwise, where there are several claimants, it would be the duty of the assessor to estimate their relative chances of success, and then each assessment would constitute a lien upon the land, which would be absurd.

It was to illustrate the impossibility of assessing or taxing such a claim as this, that we cited the case of Ballance v. Forsyth, 13 Howard. In that case, the Court say, "although the right of Bourbonne to lot sixty-five, was recognized by the government, yet until the public surveyor marked the lines, its position and extent could not be ascertained. The patent was not issued until 1845, two years after the tax was assessed, and it is not perceived how the specific lot could be taxed, when its boundaries were not known." The county assessor of Mariposa, it seems, has discovered a method of doing that which appeared impossible to the Supreme Court of the United States. Verily, this is a progressive age!

*Wade & Fower* for Respondents.

In the case of Ballance v. Forsyth, the lot claimed by defendant, under the tax-title, was not assessed for taxes due on it, but was sold to satisfy the assessment on a fractional quarter-section of land, held by defendant under the general laws for the entry and sale of public lands. This particular lot was within the limits of defendant's claim, but had previously been granted to the plaintiff under the acts of Congress of 1820 and 1823, for the benefit of settlers in Peoria. "It seems (page 24) to have been included in the south-east fractional quarter-section, but it was not taxable as a part of that tract." Again, objection was found to the tax-title, because it did not describe with any accuracy the portion of the tract that was sold for the assessment. (P. 23.) While it is unnecessary, and often impossible, to give a particular description of the lands assessed, it is only necessary that the portion sold for the assessment should be described with certainty.

In Carroll v. Perry, 4 McLean U. S. Circuit Court R., 27, the Court say: "The taxing power of a State may reach everything within a State, which can be denominated property. It may be made to embrace all equitable credits, of whatever description they may be." The Court in that case refused to enjoin a sale

for taxes, the ground of the application being that a patent had not issued, at the time of the assessment, and therefore the land was not at that time subject to taxation.

It does not appear from the bill, that the assessment was not against a tract of ten leagues, the location and boundaries of which were known and fixed without the formalities of a "final survey" by the United States Surveyor-General.

The assessor is allowed until "the first Monday in August," (see Rev. Act, C. L., 692,) to make his assessment, and "he shall make also subsequent assessment, whenever he has reason to believe that property liable to taxation, has not been previously assessed." The "final survey" was approved by the Surveyor-General on the thirty-first of July, 1855, having been previously made. The assessment may have been made after the survey, and before "the first Monday in August," or "subsequently," as the law provides. Or, if made before, the survey operated to correct all defects in the description, in the assessment, and to identify it with this particular tract, according to its metes and bounds.

The Supreme Court of the United States in Fremont v. The United States, 17 Howard, 542, declared that appellant's grant to these ten leagues "owned and claimed" by them, was, at its date, 1844, a title "not merely inchoate or equitable, but a legal title, which conveyed a present and immediate interest in fee to the grantee." We respectfully submit that the appellants being the owners of this property, and entitled to its revenues for years back, cannot avoid or be exempted from the payment of the taxes sought to be enforced against it, for their proportion of the expenses of government whose protection and benefits they have enjoyed.

On first hearing of this case, at the October Term, 1856, MURRAY, C. J., delivered the opinion of the Court—HEYDENFELDT, J., and TERRY, J., concurring.

This was a bill in equity, to restrain the defendant from selling certain lands in Mariposa county, for non-payment of taxes. The bill alleges two errors in the assessment; first—that the survey was made, and the patent issued to the grantor after the assessment; and, second—that the land is assessed as "ten square leagues," and not by any specific boundaries.

In support of the first proposition, the case of Ballance v. Forsyth, 13 How. U. S. R., 24, is relied on. An examination of that authority, will show it has no application to the present case, because, by the act of Congress, admitting Illinois into the Union, it was specially provided, that lands sold by the United States, should not be liable to taxation until five years after the sale thereof, or after the issuing of the patent.

Without inquiring how far such an act would be constitutional,

it may be generally stated, that no such act has been passed with reference to California, and that all "lands lying within this State, owned or claimed by any person or corporation, whether patented or not," are made liable to taxation by the statute of this State.

The second error is untenable. The statute requires, that the assessment shall contain a list of the real estate, "giving the quantity of acres in each tract, as near as may be possible, except in case of city or town lots, which may be described by reference to numbers and streets."

To require a particular description of rural lands, would be imposing an unnecessary burden on the officer.

Before closing this opinion, we would observe, inasmuch as a question of remedy was made, that since the decision of Dewitt *v.* Hayes, 2 Cal., the Legislature have so amended the law as to make a tax-deed *prima facie* evidence of what it contains; so that it is not necessary, as it formerly was, to introduce evidence of the regularity of the assessment, and all the proceedings under it, and we are of opinion that this has changed the rule in reference to the right of a party to invoke the aid of a Court of Chancery, in a case where his property is about to be illegally sold for taxes, for, as the deed is *prima facie* evidence of title, and the error is in the assessment, the defendant would be driven to extraneous facts to show its illegality. There being no error patent upon the face of the proceeding, the deed being the only evidence necessary, would operate a cloud upon the title.

In Gaar *v.* Robinson et al., this point was not called to the attention of the Court, and the case went off on the decision of Dewitt *v.* Hayes.

Judgment affirmed.

On the re-hearing at this term, TERRY, C. J., delivered the opinion of the Court—BURNETT, J., concurring.

This was a proceeding to enjoin the sale of ten leagues of land, in Mariposa county, known as the Fremont grant.

This grant was, in the year 1855, listed for taxes by the assessor of said county, and its value assessed at five hundred thousand dollars.

By law, assessments were required to be made, and it is admitted this assessment was made between the first Monday of March and the first Monday of August, 1855. It is also admitted that the final judgment, confirming Fremont's grant, was rendered on the twenty-seventh day of June, 1855; that, pursuant to said judgment, a segregation of the land from the public domain was accomplished, by a survey, on the thirty-first of July, 1855, and that, in default of the payment of taxes assessed as above, the defendant, who was sheriff and *ex officio* tax-collector

Palmer *v.* Boling.

for said county, threatens to sell the land contained in the boundaries established by the survey.

The appellant insists: First, that prior to the thirty-first of July, 1855, plaintiff had only an equitable right to have the ten leagues of land, within certain limits, located and set apart to him by the United States, and that, until the segregation was actually made, he was not the owner of any specific body of land, subject to be assessed for taxes.

Second, that an assessment is an estimate of value, made by an officer sworn to exercise his judgment fairly, and to do this, it is necessary that he should know quantity and *quality* of the land, which, in this case, could not have been known to the officer before the survey, as the ten leagues were included in a much larger tract, one portion of which was worthless, and the other immensely valuable.

The first point contended for is in direct conflict with the decision of the Supreme Court of the United States, in the case of Fremont *v.* United States. It was then held that the grant, under which plaintiff claims, conveyed not merely an inchoate, or equitable, but a legal title, which vested in the grantee a present immediate estate in fee. 17 Howard, 542.

By our Revenue Law, all property within the State, of whatever description, owned by an individual or private corporation, is subject to taxation; and if plaintiff was the owner of land within the State, he cannot escape duties which such ownership imposes. But, if we admit the correctness of both points contended for, it does not necessarily follow that the assessment is illegal. The precise time at which it was made is not shown; it is, however, admitted to have been between the first Mondays of March and August. It is not denied that, immediately upon the segregation of the land from the public domain, the legal title vested in plaintiff, and the land was subject to taxation. This occurred on the thirty-first day of July, which was Tuesday. Excluding the day on which the survey was made, and the fifth day of August, (which was Sunday,) four days intertervened between the survey and the first Monday of August, on any one of which an assessment could have been legally made, and, in the absence of any evidence to the contrary, we must presume that the officer properly performed his duty, and that the assessment was subsequent to the survey.

For these reasons, in addition to those contained in the opinion of the late Chief Justice, the judgment is affirmed, with costs.