## FREMONT v. BOLING.

A Sheriff, whose term of office has expired, has no right to collect the State and County tax, as unfinished business, from the assessment list which came into his hands while in office.

The taxes of 1855, after March, 1856, are not of the unfinished business of the outgoing Sheriff, for the reason that after the settlement of the Sheriff with the County Auditor in March, the delinquent taxes of that year are transferred to the tax list of the succeeding year, and it is made the duty of the *then* Sheriff to proceed to collect such delinquent tax *as other* taxes.

There is no irreconcilable conflict between the amendatory Act of 1853 and the Revenue Acts of 1853 and 1854. The provision that the Sheriff going out of office shall continue to collect the taxes coming to his hands before his term expired, was intended to provide for the period intervening between October and March, the time of his settlement.

In such a case, the party who is about to be injured by the sale of his property, has a right to an injunction against the person offering to sell, to prevent the sale.

APPEAL from the Thirteenth District, County of Mariposa.

This was a bill for an injunction to prevent the defendant from selling certain property of plaintiff's for the delinquent tax of 1855.

The statement of facts in this case was agreed to, and as disclosed by that agreement, is as follows : In 1855 the plaintiff was the owner of a large tract of land known as " *Las Mariposas.*" In that year, the property was assessed for State and County taxes, and the amount of tax due thereon was $8,000. The defendant, Boling, was the Sheriff of Mariposa County, where the land is located, during the years 1854 and 1855, and until the month of October, 1855, at which time Thomas Early, his successor, qualified and entered upon the discharge of the duties of such office. The assessment roll for the year 1855 came into the hands of the defendant, Boling, during that year, and before his term of office expired, and never was delivered to his successor. In January, 1858, defendant had advertised the property " *Las Mariposas* " for sale, for the delinquent tax for 1855, and was proceeding to sell the same as former Sheriff, claiming a right to do so, as unfinished business of his office, when he was restrained by this action.

The judge below made an order citing the defendant to appear at a time and place, to show cause why an injunction should not issue ; and in the mean time restrained the defendant from selling. At the time

and place appointed, and after hearing of the parties, the Judge ordered the injunction to issue, upon the plaintiff giving bond; which was done.

At a final hearing, plaintiff had judgment for his costs, and the injunction was made perpetual: defendant appealed to this Court.

The question presented to this Court is, whether the defendant, as former Sheriff, could collect the tax as unfinished business of his office, after the expiration of his term of office.

*B. B. Harris* for the Appellant, argued:

I. The law does not authorize, and will not tolerate interference in the first instance, and before the time and right of a hearing with the matters and property of persons, either by extraordinary writs or provisional remedies, unless previous indemnity or " compensation" is given or tendered them. And in attachment, injunction, replevin and other like cases, this indemnity or compensation has been repeatedly decided by Courts to be the *bond* on which such process is contemplated to be grounded. In this case, the defendant has been restrained and damaged by order of the Court from doing certain acts, without having any such previous security; said restraining orders being nothing more more or less than a temporary injunction.

II. The plaintiff is not the proper person to raise the question of rights of office in this case; the Sheriff incumbent is the person; and the remedy should be by *quo warranto* action for usurpation, or payment of taxes under protest and writ by injunction. (Minturn *et al. v.* Hayes, Sheriff, 2 Cal. R. 590.)

III. It is shown in the complaint that the advertisement of sale had commenced. Now an execution being one entire thing, the officer making the levy, is in legal contemplation, the one to finish the sale; or what in this case is still stronger, the officer advertising the sale must be the one to complete it, otherwise the law would be inconsistent, and would work repugnancy, ambiguity and confusion, and thereby divest obedience to a command *in fieri* and the rights under it, and devolve the same upon another and different person. (People *ex rel.* Dunn *v.* Boring, 8 Cal. R. 406; Manlove *v.* White, 8 Cal. R. 376.)

The Sheriff could not, in March following the levy, have inducted in

the list to be handed in by him under the revenue law of 1853 and section 96 of the Act of 1854, the taxes due on the premises in question, because the same were then in the course of sale for the taxes in question, and in the Courts of Law; and this would have been a very good defense against charging them in the delinquent list of the year 1856, especially if the legality of the assessment or of the taxes was then in judicial controversy.

Admitting the allegations of the complaint to be true, section 23 of the revenue law of 1857 provides that a person acting *de facto* as an officer, is sufficient, etc. ; 2 Kent, edition 8, 339.

The authority of an officer cannot be collaterally attacked (13 Wend., 491–4 ; 8 Paige, 428, etc., and sec. 23, Laws of 1857) makes this a ground of defense to the suit upon the Sheriff's deed ; therefore, there could be no " cloud upon the title." (7 Johns. 549 ; 9 *Ib.* 135 ; 13 Wend. 491 ; 7 Cal. Rep. Doane *v.* Scannell, and People *v.* Same ; 8 Paige, 328.) The assessment is proper. See 6 Cal. Rep., Palmer *v.* Boling *et als.*—(This case where Palmer was plaintiff.) The imposition of taxes belongs exclusively to the Legislature; their collection to the executive officers; and the judiciary is limited to the inquiry whether they have been constitutionally imposed, legally assessed and the law observed in their collection, all of which are purely legal questions and of equity cognizance. (Brooklyn *v.* Mergrole, 26 Wend. 132 ; Van Doran *v.* Mayor, &c., 9 Paige, 138; Wiggins *v.* Mayer, 9 Paige, 16 ; 4 Barb., S. C. Rep. 9 and 17 ; 3 Ohio Rep. 370 ; McCay *v.* Chilicothe.)

*Attorney General* for Appellant.

I have but little to add to that which has already been so well said by Mr. Harris, in support of this appeal.

All of the questions involved in this case were made and passed upon favorably to this appellant in the case of Palmer *et al. v.* Boling, 8 Cal. 384, except as to whether section 33 of the Act of April 29, 1857, " To provide revenue for the support of the government of this State," applies to the assessment and collection of the taxes due from respondent to the government in this particular instance.

The sole question in my mind is, whether or not the Act of the Leg-

Fremont *v*. Boling.

islature referred to is retrospective in its operation. I maintain that it is not, cannot be, and was not so intended by the Legislature.

" The general rule is, that no statute is to have a retrospective action beyond the time of its commencement." It is a well established principle, " that all laws are to commence *in futuro* and operate prospectively."

And a Court will never hold that the Legislature intended a retrospective action, unless such intention is clearly expressed in the Act. (Dash *v*. Van Kleeck, 7 John. Rep., from page 491 to 512, inclusive) —opinions of Justice Thompson and Chief Justice Kent.

That the Legislature did not intend this Act as retrospective, seems clear from the language employed.

By the provisions of the 39th section of the Act of April, 29th, 1851, concerning Sheriffs, it was provided that the former Sheriff should complete the execution of all final process which he had began to execute ; and by the explanatory Act of May 18, 1853, the collection of taxes was construed to be unfinished business." (Manlove *v*. White, 8 Cal., p. 376.) No time has ever been specified in which unfinished business, generally, shall be completed ; and unless some particular statute has fixed a limitation as applicable to this case, the old Sheriff may still finish the business of collecting the tax from respondent.

I have not been able to find any such statute. It is true, that the revenue laws then in existence required this defendant to make a final settlement with the Auditor and Treasurer on the first Monday in March succeeding the receipt by him of the assessment roll, and to return his delinquent list. But such requirement could not with any sort of justice, either to the officer or the government, be deemed to apply to such a case as this ; for the officer had been restrained by a Court of Justice at the instance of parties in interest with Fremont from enforcing the law.

The Sheriff of a county can only enforce the collection of taxes by virtue of express law ; and upon examination, you will find that the assessment roll (which is his authority for collection) must reach him in one of two ways.

1st. By the hand of the Auditor, who delivers him the roll of *that* year ; and 2nd, by the hand of his predecessor in office, who delivers the *unfinished* roll of collections.

Now, suppose that the decree in this case should be confirmed at this term of the Court, upon the ground that appellant is not the proper collector, (and none other is urged) could we proceed to collect the taxes (which were properly assessed, see Palmer *v.* Boling) by the hand of the present Sheriff of Mariposa? I answer not, because:

1st. He has not received the assessment as a part of the roll of this year; and 2nd. It cannot pass to him as the successor of appellant, and as *unfinished* business, for the reason that the Act of 1857 before referred to, is not upon principle, nor in terms retrospective, and therefore does not apply to this case; then as a consequence, the tax could not be enforced at all. (See Manlove *v.* White.) And in this connection I will add, that I have not been able to find any provision of the statute authorizing a continuance of the delinquent list " *ad infinitum*"; on the contrary, it seems that only the delinquencies of the next preceding year are placed upon the roll; therefore, if appellant cannot collect this tax, then no one can.

*D. W. Perley* for Respondent.

The point made by appellant is this: *That prior to the expiration of his term of office*, the delinquent tax list for the year 1855 was placed in his hands for collection, and that he had a right to collect said taxes as part of the *unfinished business of his office.*

Now I reply to this, that he was *no officer of the law* at the time he sought to sell the respondent's property for taxes, and that the collection of the same was *not* part of the *unfinished business of his* office.

The proper solution of this question depends on the various Acts of the Legislature of this State concerning *Sheriffs*, taken in connection with the different *Revenue* Acts from 1853 to 1857.

By the Act of 1851, concerning Sheriffs, page 195, sec. 39, it is provided that " nothwithstanding the election of a new Sheriff, the former Sheriff shall complete the execution of all final process, which he has begun to execute."

In 1853, an *explanatory Act* was passed by the Legislature, and is found on page 275, Acts of 1853. This Act has but a simple section, and provides as follows:

" That the 39th section of the Act of 1851, concerning Sheriffs, shall

be so construed as to include in its meaning the collection of all taxes put into the hands of the Sheriff for collection previous to the expiration of his term of office."

It is under this Act of 1851, and the *explanatory Act* of 1853, above cited, that the appellant contends for the right in 1858, (two years after he was *functus officio*) to sell plaintiff's property for the taxes of 1855.

The appellant proceeded precisely as if these were the *sole legislative provisions* having any bearing on the question.   He utterly ignores all contemporary and subsequent legislation, qualifying or repealing the aforesaid Acts.

But the slightest examination of the Revenue Acts of 1853, 1854 and 1857, will show that the right here claimed by appellant to act as Sheriff, and sell land for taxes, is utterly baseless, and without a shadow of foundation.

The Revenue Act of 1853, page 262, sec. 39, and the Revenue Act of 1854, sec. 96, page 111, are precisely alike in these two sections.

The sections provide, that on the *first Monday of March* in *each year*, the Sheriff shall attend at the office of the County Auditor, and the Sheriff shall then and there *make* a *final settlement for the year* for the amount of all taxes with which he stands charged, as follows :

" The Auditor shall take from the *duplicate* in the hands of the Sheriff for collection, a list of all such taxes thereon, describing the property on which *delinquent taxes* are charged, and shall *note the reason assigned by the Sheriff* why such taxes *could not be collected.*

" After *deducting the amount returned delinquent,* and the fees for collecting allowed to the Sheriff, the Sheriff shall be held liable *for the balance.*"

" The Auditor shall thereupon *balance the Sheriff's account* by crediting the Sheriff with the amount of *delinquent taxes,* and with all money paid to the Treasurer, together with his commissions for collecting."

" *No further taxes shall be collectable on such duplicate;* but whatever taxes may remain uncollected on the *delinquent list* on the final settlement, on the first day of March, shall be placed in the *tax list* of the *succeeding year,* and the Sheriff shall immediately proceed to collect the same."

Now, even supposing that the *repealing Act of* 1857 had not been passed, or that that Act has not the force and effect of a direct *repeal* of the *explanatory* Act concerning Sheriffs, passed May 18th, 1853, (Acts of 1853, p. 275) which I construe it has, in what condition would the above sections of the Revenue Acts of 1853 and 1854 leave this assumed authority of appellant to sell respondent's land for taxes?

The Revenue Act of 1853 was contemporaneous with the *explanatory Act* concerning Sheriffs, and was *in force* at the time *appellant was elected.* The Revenue Act of 1854 was passed during his term of office.

It cannot, then, be doubted that these are all Acts *in pari materia*, and are to be taken and construed together. And it is to be observed that there is *no conflict* between them; they may all stand together by giving to each a reasonable and just construction.

And it is submitted that this is the true meaning and construction of said Acts.

By the *explanatory Act* of 1853, Sheriffs were allowed to *collect taxes* as part of the unfinished business of their office.

The Revenue Acts of 1853 and 1854 operated as a *limitation on this right.*

The retiring Sheriffs *went out of office in September;* but this does not prevent them from collecting taxes on the tax list which had been put into their hands prior to the expiration of their term of office. They had this right and privilege *until the first Monday of March* succeeding the expiration of their term. *On that day their functions expired.* They had to make *final settlement* with the *Auditor* and Treasurer. They had to show *why* they had not collected the delinquent taxes; and on this showing they were *credited* with all such taxes, discharged from all liability; and the amount of the delinquent tax was added to the *assessment roll of the succeeding year.*

Now, if Boling can collect the delinquent taxes of 1855, it must be on the *old duplicate list* placed in his hands prior to the expiration of his term of office. But how can this be done, when that duplicate assessment roll, as the record shows, was returned and filed in the proper office according to law, on *the first Monday of March,* 1856?

1st. It is said that an *injunction* will not lie to restrain a sale of property for taxes, on the ground that if the sale is void, it will not cloud plaintiff's title, and the case of DeWitt *v.* Hayes is cited by Harris in his argument on file.

This doctrine was overthrown by the Court in Palmer *v.* Boling, 8 Cal. 388.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J., and FIELD, J., concurring.

The defendant was Sheriff of Mariposa County in August, 1855, at which time there came to his hands the assessment list of the taxes due the State and county. The plaintiff below was assessed on the estate called Las Mariposas, for $5,000. The defendant was succeeded in October, 1855, by one Early, as Sheriff of Mariposa County. The bill was filed in January, 1858, at which time the defendant claimed to be former Sheriff, and as such, entitled to collect this tax as unfinished business of his office; when he was arrested in his proceedings, to sell the land of plaintiff, by this injunction. The only question in the case is, whether the defendant, under the circumstances, had the right to collect; and in order to do this, to sell property for delinquent taxes due during his term, but not collected while in office. And the solution of this question involves the construction of the various Revenue Acts of this State. A review of these will settle this controversy.

By the Act of 1851 (Acts, p. 184, sec. 39) it is provided that, notwithstanding the election and qualification of a new Sheriff, the former Sheriff shall return all process and orders before and after judgment which he has fully executed, and shall complete the execution of all final process which he has begun to execute." In 1853, an Act was passed explanatory of this Act, as follows: SEC. 1. The thirty-ninth section of an Act, entitled, " An Act concerning Sheriffs, passed April 29th, 1851, shall be so construed as to include in its meaning the collection of all taxes put into the hands of the Sheriff for collection previous to the expiration of his term of office." (Acts of 1853, p. 275.)

By the 33d section of the Revenue Act of 1857 (Acts of 1857,

p. 336) it is provided, " except in those counties where, by special Act, it is provided that some other person shall be Tax Collector, the Sheriff of each county shall be Tax Collector in his county, and shall collect all taxes except municipal taxes and poll taxes.   But the fact that any assessment roll or tax list has been put for collection in the hands of any Sheriff whose term of office is about to expire, or shall expire before the collection is so completed, shall not be so construed as to make the collection of taxes on each assessment roll or tax list unfinished business of the office, to be completed after his term of office expires; but said roll shall be handed over to his successor in office, at the same time and in the same manner as other books and papers belonging to the county; and the fact that any assessment roll or tax list was so handed over shall not in any manner invalidate it, but the succeeding Sheriff or Tax Collector shall proceed to enforce the collection, in the same manner as though it had been first placed in his hands.   And any sale made, or certificate of sale or deed given by such succeeding officer, shall be as valid, and shall have the same force and effect, as though the act had been done by the officer who originally had possession of the list."   These are the provisions in reference to the office and duties of Sheriff.   But they do not stand alone.   They are to be taken in connection with other acts in connection with the collection of taxes.   The Revenue Act of 1853 (Acts, p. 262, sec. 39) provides that on the first Monday in March, in each year, the Sheriff, the County Treasurer and County Auditor shall attend at the office of the County Auditor, and the Sheriff shall then and there make a final settlement for the year with the said Auditor and Treasurer, for the amount of all taxes with which said Sheriff stands charged, in the manner following: 1. The Auditor shall take from the duplicate in the hands of the Sheriff, for collection, a list of all such taxes therein, describing the property on which such delinquent taxes are charged as the same is described in said duplicate, and shall note therein, in a marginal column, the reason assigned by the Sheriff, etc.   2. The Auditor shall forthwith record such list of delinquencies in his office, and thereupon forward the same to the Controller of State.   3. After deducting the amount returned delinquent, and the fees for the collection, returned by the Sheriff from the sev-

eral charges taxed on the duplicate, in a just, rateable proportion, the Sheriff shall be held liable for the balance, and shall thereupon pay such balance to the Treasurer. The Auditor shall thereupon balance the Sheriff's account by crediting the Sheriff with the amount of delinquent taxes, and with all moneys paid to the Treasurer, together with his commissions for collecting. No further taxes shall be collected on such duplicate; but whatever taxes may remain uncollected on the delinquent list in the final settlement, on the first day of March, shall be placed in the tax list of the succeeding year, and the Sheriff shall immediately proceed to collect the same, and on the first Monday in June and September proceed to pay over, etc., etc. The Revenue Act of 1854 (Acts, p. 111, sec. 96) is identical in this respect with the Act of 1853.

Taking, as we must, all these acts *in pari materia,* and it seems to us beyond question that the Sheriff of 1855 has no right to collect the taxes in 1858. The taxes of 1855, after March, 1856, are not of the unfinished business of his office, for the plain reason that after the settlement in March — which seems to have been designed to be a final settlement — the delinquent taxes of that year go on the tax list of the succeeding year, and the Sheriff — meaning the Sheriff in office — shall proceed to collect them as other taxes. It certainly was not contemplated that these delinquent taxes shall be collected by two or more Sheriffs. And to remove all doubt, it is expressly said that after this settlement " no more taxes shall be collectable on this duplicate ;" they are to be put on another list, and collectable as a portion of the revenues of the year for which that list is made. The policy of the Act is as plain as its language. The Legislature meant to avoid the confusion of partial collections of taxes and of various collectors. It designed to prescribe a simple system of assessments, collections and settlements. No mode is provided for further or renewed settlements. After a great length of time, the Sheriff's bond might become insufficient. Small remnants of taxes on an old tax list might be overlooked. Confusion would grow out of the retaining of a partial collection of taxes by an old Sheriff, while there is no apparent object in the old Sheriff's keeping this petty appendage to the office, which, in a great majority of instances, would be more trouble than it

is worth.   The simple process of adding to the new list the uncollected taxes removes all this difficulty, and makes a complete and comprehensive fiscal system.

Nor is there any irreconcileable conflict between the amendatory Act of 1853 and the Revenue Acts of 1853 and 1854.   The provision that the Sheriff going out of office shall continue to collect the taxes coming to his hands before his term expired, was intended to provide for the period intervening between October and March, the time of his settlement.   To authorize him, in other words, to collect the taxes upon his duplicate ; not to give him authority to collect taxes *upon* a part of another list coming to the hands of another and different officer.   This is shown as well by the express language of contemporaneous Acts, as' by the obvious reason of the thing.   Even if the construction were more doubtful, the rule which requires us to construe all these Acts in regard to the same subject matter as if they were one law, each provision, sentence and word qualifying the rest, would force us to this construction in order to reconcile their various parts.   But the construction needs no straining of words.

It by no means follows, that because defendant Boling cannot lawfully collect these taxes, they must be lost.   We see no difficulty in the way of their collection, if they were otherwise lawful.

The other points of the appellant are not well taken.   Boling was not *de facto* Sheriff in 1858, or any Sheriff at all.   Any person else might have taken the tax list and proceeded as legally to sell any other man's property.   He claims to act by virtue of law, when he has no right to act.

Judgment affirmed.