## HIGH *v.* SHOEMAKER *et al.*

| 22 | 363 |
| 99 | 596 |

THE constitutional provision, " that taxation shall be equal and uniform through-
out the State," is not violated by a Revenue Act exempting from taxation
church and school lands, and lands of the United States.

The omission in the Revenue Act of 1857, to tax all the lands in the State, did
not render the act void for unconstitutionality.

The provisions of Sec. 13 of the Revenue Act of 1857, that the Tax Collector
shall add to the tax of a delinquent five per cent. and enforce the collection
of the same, in connection with the tax, by sale of the property, is consti-
tutional, and a sale made in pursuance thereof passes a valid title.

The five per cent. is not a substitute for the tax or a penalty for its non-payment,
but one of the means prescribed for obtaining the tax itself by offering an
inducement to pay it when due.

The constitutional provision that no person shall be deprived of his property
without due process of law, is not applicable to proceedings by the State to
obtain from citizens their proper contributions to the expenses of administer-
ing the Government.  Long-established practice, under a similar provision in
other Constitutions, had fixed this qualification to the meaning of that clause
at the time our Constitution was adopted.

Under the Revenue Act of 1857 the assessment of lands outside of a city or incor-
porated town need not describe the land by metes and bounds.

A description of land in an assessment roll as follows : "Four hundred acres of land
situated on the Volcano and Jackson Road, in Township No. 1, of the County
of Amador and State of California, and commonly known as the 'New York
Rancho :' " *held,* to be sufficient under the Revenue Act of 1857.

APPEAL from the Sixteenth Judicial District.

Ejectment to recover a tract of land in Amador County called
the "New York Rancho."

The complaint alleges that in 1858 the premises were owned by
one Hammond, and in the month of May, of that year, an assess-
ment of forty-eight dollars and sixty-eight cents for State and
county taxes was made thereon ; that the property was assessed to
Hammond, and was described upon the assessment roll as "Four
hundred acres of land, situated on the Volcano and Jackson Road,
in Township No. 1, of the County of Amador, and State of Cali-
fornia, and commonly known as the 'New York Rancho;' " that on
the third Monday of October of that year, the taxes being unpaid,
the Tax Collector levied thereon, and made an entry of the levy on
the assessment roll, and charged the delinquent, Hammond, five

per cent. additional upon the amount of the original tax; that the collector made out the delinquent list as required by law, in which the property was described as in the assessment roll, and opposite the name of Hammond therein was placed the amount of the tax and the five per cent. and costs, and that this list was duly published with a notification of the time and place where the property would be sold for payment of the amount thus due; that in pursuance thereof and in due form as prescribed by law, the land was exposed to sale; that Henry Barton became the purchaser of the whole rancho, that being the least portion of the land for which any bidder offered to pay the taxes, per centage, and costs; that payment was made by Barton, and a certificate of sale issued to him, and after the expiration of six months—no redemption having been made—a deed in due form was made to him by the collector; that the title acquired by Barton is now through several mesne conveyances vested in the plaintiff; that defendants are wrongfully in possession, claiming under Hammond. Plaintiff prays for restitution of the property and damages in the sum of five hundred dollars.

Defendants demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action. The Court below sustained the demurrer, and dismissed the action, and from this judgment the plaintiff appeals.

*Robinson & Beatty*, for Defendant and Respondent.

I. The limitation of the taxing power as to the manner of imposing the burdens for the support of Government and its citizens, has its foundation in natural justice, as fully appears from all the authorities. (5 Dana, 31; 9 Id. 516; 4 N. H. 556; 6 Barb. 209; 2 Kent's Com. 331.)

By the Constitution, all property is to be uniformly taxed. By the Revenue Law, all property is not uniformly taxed. On the contrary, a large portion of property of various kinds and in different circumstances, claimed by private title, is especially exempted. Among the rest, all the land, embracing more than three-fourths of the territory of the State, belonging to the United States, is specifically exempted from contributing to the support of the Government.

High *v.* Shoemaker.

That the land belonging to the Federal Government is subject to taxation by the State within which it lies, is a proposition sustained by all the authorized expositions, whether judicial or political, of the true character of the General Government in its relations to the States.    (*Hayan* v. *Pallord*, 3 How. 212; McLean, 531.)

Here, then, in our Revenue Act, is found a flagrant violation of the principles of natural justice, the maintenance of which is expressly secured by the binding obligations of the Constitution, in the relieving from its duty to share the expense and support of the State Government, the private proprietorship of more than three-fourths of the whole landed interest in the State, and consequently casting the increased and unequal burden which should be shared alike by all, on the remaining fourth.

II.    The summary disposal of the property of the citizen by the ministerial officers of the law for the payment of taxes is a violation of that fundamental principle of Government, "that no one shall be deprived of his property without due process of law." "All the cases," says a commentator on this subject, " conclude that the summary exercise of this power is against the spirit of the Constitution, but defend it on the ground of immemorial usage and State necessity." (Blackwell, 41.)

To justify the exercise of usurped powers, by a Government which professes to owe its powers to an organized law, on the score of State necessity, is opposed by the whole theory on which constitutional Governments are formed and enforced.    And to assert that such a Government can claim on the score of the necessity of the State a power which is prohibited to it, is a contradiction in terms.

III.    But whatever may be held as to taxes proper, the Constitution certainly forbids the collection of the five per cent. added thereto by the Revenue Act, by the summary process here adopted.

It is said, by the appellant, that this per centage is added to defray the expenses of collecting the delinquent taxes; it is costs. That it is not added to defray the expenses of collecting is obvious from the considerations : 1st, that it is imposed on all persons who fail to pay their taxes on or before the third Monday in October of each year; and, 2d, that the same section of the statute provides that one-half the amount of this five per cent. shall go to the State, which is at no expense in collecting the delinquent tax.

That it is not costs is not only rendered irresistibly clear by the last of the foregoing considerations, but is further demonstrated from the fact that this five per cent. is no where denominated costs, but in Sec. 14 of the Act, provision is made for the payment of costs, *co nomines*, and throughout the statute the charge for services rendered or expense incurred is mentioned as costs and provision made for their payment.

That it (the five per cent.) is not tax, is shown from the following considerations: 1st, it is no where denominated or referred to as a tax throughout the statute; 2d, it is not assessed by the officer designated by the Constitution as the person clothed with that power (the Assessor), but is to be imposed by the Tax Collector; 3d, it is not apportioned as taxes are between the State and counties as their respective needs require, but one-half goes to the State and the other to the county, at all events; 4th, it is not laid for the support of the Government; 5th, if it were a tax, it would be an obvious violation of the rule of uniformity in taxation, inasmuch as it would impose a greater burden on one than it would on another, each having property of the same kind and value.

This additional charge is then, from the nature and character of it and from the language of the statute, a penalty, and so the Court has designated it in *The People* v. *Seymour* (16 Cal. 344). As a penalty, its enforcement in the summary mode herein adopted cannot be justified on any ground of " State necessity." " This power of collecting taxes in a summary mode, though indispensable, must be used only to the extent absolutely demanded by the public necessities, and never abused by applying it to the purposes of penal enactments, and, under the guise of taxation, to impose penalties which are to be enforced without recourse to the ordinary tribunals." (Blackwell on Tax Titles, 41, 42; *Burger* v. *Carter*, 1 McMullin's L., S. C., 420.)

The statute, in Secs. 14, 15, 17, 18, furnish the whole authority under which the collector acts in selling land for taxes. These constitute his power of attorney. He acts under a naked statutory power, and he must pursue its instructions strictly and exhibit his powers clearly. But these sections give to him no right to sell the land of another for anything else but for taxes and costs. If, then,

this five per centage is not cost and taxes, which has been clearly shown, he had no authority to make the sale, or rather he has exceeded his authority and his acts and doings herein are void. The authorities to sustain are collated by Blackwell, on page 192 of his Treatise.

IV.   The statute (Sec. 4, Wood's Dig. 615) requires the assessment roll to "give the metes and bounds, the quantity of each tract outside of a city or town, and the locality and township where it is situated."   The description in this case does not comply with the requirements of the statute, inasmuch as it omits to describe the "locality" of the tract assessed, nor does it give the "metes and bounds."

This question has before been passed upon by this Court, in the case of *Lachman* v. *Clark* (14 Cal. 133), and therein the requirements of the statute strictly enforced, as well as in the case of *Ferris* v. *Coover* (10 Cal. 632).   The difference in point of description between the first-named case and the one at bar is scarcely discernable.   In that case, the name of the rancho was given, its situation on the Auburn Road, and its locality as regards its distance and direction from Grass Valley.   But the number of acres, the boundaries, and the township, were omitted.   In this case, the name of the rancho is given, the number of acres, and also the township, but there are no boundaries mentioned and no locality named by which the place could be identified, other than by the designation of the New York Rancho.

*Farley* and *Armstrong*, for Plaintiff and Appellant.

I.   The constitutional provisions that taxation shall be equal and uniform, does not require universality of taxation.   The Legislature may exempt a part of the property of the State from paying taxes.   (*People* v. *Naglee*, 1 Cal. 252 ; *People* v. *Coleman*, 4 Id. 53 ; *Thompson* v. *Williams*, 6 Id. 88 ; *People* v. *Rogers*, 13 Id. 165 ; *People* v. *Railroad Co.*, 1 Mich. 460 ; Sedgw. Cons. Law, 557.)

II.   The five per cent. added to a delinquent tax is costs, and may be collected by the same process as the tax itself, without vio-

lating the Constitution. (*People* v. *Seymour*, 3 Ohio, 277 ; *Sears* v. *Cottrell*, 5 Mich. 262 ; 4 Comstock, 428.)

III.   The description of the property in the assessment roll was sufficient.   (Rev. Law 1857, Sec. 4 ; *Palmer* v. *Boling*, 8 Cal. 384 ; *Patten* v. *Green*, 13 Id. 328 ; *Sibley* v. *Smith*, 2 Gibbs, 503 ; *Blakeley* v. *Beston*, 13 Ill. 715 ; *Ervine* v. *Helmer*, 13 Serg. & Rawle, 156.)

The cases of *Kelsey* v. *Abbott* (13 Cal. 616), and *Lachman* v. *Clark* (14 Cal. 131), which are relied on by the respondents, are not in point.   In the first case, there were two lots assessed together at the aggregate valuation of $7,000, which was fatal of itself to the case ; the lots were not assessed to the owner, or to an unknown owner, and the Court said the assessment was void for this reason alone, and such is unquestionably the law.   It does not appear that the lot in question was situated in a city in fact, or in an incorporated town ; and if not, the quantity of acres should have been given as near as possible ; and if it was so situated the lot should have been designated by number, or some well known name, that it might have been known, which was not done, and this would avoid the title.   But none of these objections exist in the case under consideration.   It is true the Court said : " But the assessment is fatally defective in omitting to ' give the metes and bounds, or describing the premises by lots or fractions of lots.' "   (Wood's Dig. 616, Sec. 4.)   But this is not saying that a description by metes and bounds is absolutely necessary, and if it were, it would be mere *obiter*, because the case was decided upon another point involving fraud, as an examination of it will show ; and, besides, the Court did not attempt to give an interpretation of the expression " or otherwise," used in the same sentence of the section quoted from, and the facts of the case show that the point was not involved in the decision.

The case of *Lachman* v. *Clark*, is not like the present.   The land was situated outside a city or incorporated town.   The number of acres as near as possible, or the township where the land was situated was not given, and both of these are expressly required by the second subdivision of the fourth section of the act (Wood's Dig. 616), and the question of boundaries was not involved in the decision of the case.

NORTON, J. delivered the opinion of the Court—CROCKER, J. concurring.

This is an action of ejectment, in which the plaintiff claims title under a tax sale.  A demurrer to the complaint was sustained and a judgment rendered in favor of the defendant, from which the plaintiff has taken this appeal.

The complaint sets forth a levy of the tax and subsequent proceedings for a sale of the premises under the Revenue Act of 1857, and the first objection taken is, that the law is void because certain lands, such as church and school lots, and the lands of the United States, are exempted from taxation, contrary to the provisions of Sec. 13 of Art. 11 of the Constitution of this State, by the terms of which it is required " that taxation shall be equal and uniform throughout the State," and that " all property in this State shall be taxed in proportion to its value, to be ascertained as directed by law."

The meaning of this section of the Constitution was considered by this Court in the case of the *People* v. *Coleman* (4 Cal. 46), in which the Court say : " If the position contended for by the respondent be correct, then all property must be taxed, and the Legislature would have no authority to exempt any species of property from taxation ; yet the power of the Legislature to exempt the property of religious and eleemosynary corporations has not been doubted."   And : " From these considerations we are of opinion that the words ' equal ' and ' uniform ' apply only to a direct tax on property ; that the Legislature may select or exempt such property as in its discretion it may think proper," etc.   Although that case arose upon a law imposing a tax which was considered a tax upon an avocation or business, and not directly upon property, yet it was necessary for its determination to consider the section in question ; and if the remarks above quoted may not be deemed an adjudication upon the direct question now under consideration, we think they are, for the reasons given in that case, a correct interpretation of the Constitution, and that the omission to tax a portion of the lands in the State does not render the Revenue Act of 1857 void.

It is further objected that the five per cent. charged by the col-

lector, in pursuance of Sec. 13 of the Revenue Act, is a penalty, and cannot be collected summarily, but only, if at all, by due process of law. It, however, is not imposed in terms as a penalty or punishment. The tax payer is allowed until the third Monday of October to pay his taxes, and if at the close of that day he is in default, then further proceedings are to be taken to enforce the judgment. Among other things, the delinquent is charged five per cent. upon the amount of his tax. This is not an equivalent for the tax, or a substitute for it, or a sum fixed, by the payment of which an atonement is made for the default to pay the tax, but is one of the means prescribed for obtaining the tax itself by presenting an inducement to make voluntary payment on or before the day fixed for that purpose. We cannot say that it was not competent for the Legislature to authorize this per centage to be collected in the same way as the fees of the officers made necessary in other proceedings to enforce the payment of taxes. It might be admitted that the sale of property for the satisfaction of taxes, together with the expenses of the proceedings, summarily by an officer, without the previous judgment of a Court, is apparently inconsistent with the provision of our Constitution that a man shall not be deprived of his property without due process of law, and yet the Court not be authorized to declare the law void, because universal practice had established, at the time our Constitution was adopted, that this provision in Constitutions was not understood as applicable to proceedings by the State to obtain from citizens their proper contributions to the expenses of administering the Government. (See Blackwell on Tax Titles, cases cited, 40, 41.)

It is further objected that the description of the land sold fails to comply with the requirement of Sec. 4 of the Revenue Act, inasmuch as it does not give the "metes and bounds," or state the "locality." From the confused mode in which this portion of Sec. 4 is expressed, it is not possible to say that the requirements as to metes and bounds apply to lands lying outside of a city or incorporated town. If they do, then the alternative also applies, that they may be described "otherwise." The locality of the premises was sufficiently given, by stating that it was the tract known by a particular name, which is stated, and situated on a particular road,

which is named, in a particular township of Amador County, unless indeed it were necessary to give its precise "metes and bounds," which, as we have seen, was not required.

The demurrer should have been overruled, and the judgment is therefore reversed, and the cause remanded for further proceedings.

On petition for rehearing, NORTON, J. delivered the opinion of the Court—COPE, C. J. and CROCKER, J. concurring.

The petition for rehearing in this case insists that by a change in the punctuation it may be made apparent that Sec. 4 of the Revenue Act of 1857, requires that in listing lands situated outside of cities or incorporated towns the metes and bounds must be given, and that it was so decided in the case of *Lachman* v. *Clark* (14 Cal. 133).

So long as the words of this section stand in their present order and coupled by the conjunction " or," no change in the punctuation can make it clear that the words " giving the metes and bounds," apply to country lands and not to city lands. Considering the whole sentence, it seems more probable that the intention was to direct country lands to be listed without saying in what precise manner, further than " giving " the quantity of acres and the locality and township where situated, and as to city lands not requiring the quantity, but " giving" metes and bounds, or other sufficient description. The probability of this being the intended meaning of the section is strongly corroborated by the fact, that this is substantially the provision upon this subject of every Revenue Act passed previous to the Act of 1857, and is very nearly the language of the Act of 1854, which was the last law previous to the one under consideration. (Act of 1854, 103, Sec. 73.) In any way of viewing it, however, the sentence is obscure and the meaning doubtful.

Under these circumstances, if a construction of the sentence had been distinctly given by this Court, and had become a guide for assessors, it should be followed. But no such construction has been given. In two cases the mode of listing country lands under the Act of 1857, has been referred to in general terms, but without a decision being made specially as to the exact application of the

words " metes and bounds." In *Patten* v. *Green* (13 Cal. 325), a tract of land lying outside the town of Petaluma was assessed under the Act of 1857, without giving any " metes and bounds," but giving the ·quantity of acres and the name of the ranch.   The Court say that it was properly taxed by this description, within the case of *Palmer* v. *Boling* (8 Cal. 388).   In this case of *Palmer* v. *Boling*, no metes and bounds were given, and the Court say: " To require a particular description of rural lands would be imposing an unnecessary burden on the officer."   This assessment was under the law of 1854, which does not speak of " metes and bounds," and the case is therefore only applicable by being adopted in the case of *Patten* v. *Green*, which was an assessment under the law of 1857.   The law of 1854 is, however, the same as we have supposed to be the meaning of the law of 1857, and the case of *Patten* v. *Green* in this way becomes an indirect construction of the law of 1857.   In the case of *Lachman* v. *Clark* (14 Cal. 131), the Court say that Sec. 4 of the Act of 1857, requires lands outside of a city or incorporated town to be described by giving the metes and bounds, and the number of acres and the locality and township where situated.   The exact application of the term " metes and bounds " was, however, not discussed by the counsel who sought to sustain that assessment, he resting his case on other grounds; nor was it specially considered by the Court. The assessment did not give the quantity of acres, nor the township where situated, and was for that reason fatally defective by the undisputed provisions of Sec. 4.   That under these circumstances the Court coupled " metes and bounds " in a general remark, embracing these undisputed requirements, is not, we think, to ·be held to be a distinct adjudication on this separate question, certainly not more than the general remarks of a contrary sense, employed in the case of *Patten* v. *Green*.   Neither case, we think, can be held to be a distinct construction of this section in this precise particular.

Of the many tax cases that have come before us, we do not remember one in which rural lands have been described by metes and bounds ; and considering that such a description was not required by any tax law prior to 1857, and considering, to say the least, the very dubious meaning of the law of 1857, and which may

reasonably be considered the same in effect as the law of 1854, and considering the influence of the decision in the case of *Patten* v. *Green*, we have no doubt assessors have generally interpreted the law as we do, and that very few if any assessments of rural lands made since 1857, any more than those made previously, have given the metes and bounds.   A decision now that would overthrow all these assessments, should have plainer grounds to rest upon than the possible construction of so obscure a provision as that of Sec. 4 upon this subject, or the remark in the case of *Lachman* v. *Clark*, made under the circumstances we have mentioned.

Rehearing denied.