GEORGE J. BUCKNALL *et al. v.* CHARLES R. STORY.

| 36 | 67 |
| 120 | 6 |
| 36 | 67 |
| 122 | 542 |
| 36 | 67 |
| 135 | 184 |

INJUNCTION TO RESTRAIN TAX SALE.—A Court will not restrain a sale for taxes when it is apparent upon the face of the proceedings upon which the purchaser must rely to make out a *prima facie* case to enable him to recover under the sale, that the sale would be void.

ADDING FIVE PER CENT TO AN ASSESSMENT.—The Tax Collector of the City and County of San Francisco has no authority to add five per cent to an assessment for widening Kearny street, *on* failure of the owner *to* pay the assessment when due.

VOID TAX SALE.—Property sold for taxes must at the time of sale be liable for the entire amount of tax for which it is sold, or the sale will be void.

TAX DEED AS EVIDENCE OF TITLE,—A deed executed under a sale made for the non-payment of an assessment for widening Kearny street, in San Francisco, without other evidence, is not *prima facie* evidence of title.

EVIDENCE TO RECOVER UNDER TAX SALE.—A purchaser under a tax sale for widening Kearny street, in San Francisco, in order to recover the land, must introduce in evidence, not only his deed, but the assessment, and must show the regularity of all the proceedings.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

The plaintiffs appealed.
The other facts are stated in the opinion of the Court.

*McCullough & Boyd*, for Appellants.

The adding of the five per cent was unauthorized, thus invalidating the whole assessment. (Blackwell on Tax Titles, 1st Ed., p. 192.) It was levied under section fifteen, subdivision five, of the Act in question, and section thirteen of the Revenue Act, applicable to San Francisco. (2 Hittell's Dig., 6,309.) The adding of the penalty is hardly any part of the "manner" for the collection of the tax.

The cases of *High* v. *Shoemaker*, 22 Cal. 369, and *People* v. *Todd*, 23 Cal. 181, simply sustain the validity of the imposition of such a percentage, when the law prescribes it.

Subdivision five of section fifteen reads: "The same shall be thereupon collected in the manner then prescribed by law for the collection of general taxes in said city and county."

Such law prescribed the making up of the delinquent list, (2 Hitt. 6,310;) the publication thereof (6,311) exactly as was done in this case, commencing on the fourth Monday of November, 1867; the advertisement, as averred in the complaint, specifying when the Collector would commence to sell the property described in the roll, and how he would sell it, and for what; that he would sell the smallest quantity to any one who would pay the assessment against any piece of property, together with the percentage and the two dollars for a duplicate certificate of sale; that he would sell the property, subject to redemption in six months by payment of the purchase money and fifty per cent in addition; if not redeemed, that he would give absolute conveyances as provided by law, exactly as prescribed by sections sixteen, eighteen, twenty, twenty-two, and twenty-three of the Revenue Act. (2 Hitt. 6,312, 6,314, 6,316, 6,318, 6,319.) And the complaint avers that the defendant, if not restrained,

would sell the property of the plaintiffs "in conformity with the terms of the advertisement aforesaid."

The defendant's acts, and threatened acts, show clearly that he was following the provisions of the sections of the Revenue Law cited. He, at least, thought that those sections must govern him in the manner of his collection. He proposed to give certificates of sale and absolute conveyances. Now, would that deed cast any cloud upon the plaintiffs' title? In an action thereon by the purchaser for the possession of the land, would the owners be called upon to introduce any evidence to overcome its effect?

The Collector issues a certificate "stating substantially that the property was assessed, giving (when known) the name of the person to whom it was assessed; that taxes were levied on it according to law; that these taxes had not been paid; that publication of the intention to sell for the taxes was made as provided by law," etc. (Section 18.)

The recording of this certificate vests, in the "purchaser and his assigns," the State lien. (Section 20.) At the end of six months, if there is no redemption, the Collector makes to the purchaser a deed "stating substantially the matters stated in the certificate." (Section 22.) The matters "substantially recited in the tax certificate and * * * in the deed, shall be deemed, and they are * * · * declared to be all the requisites essential to the validity of sales made for taxes, and a deed made in conformity with the requirements of section twenty-two shall convey to the grantee the absolute title to the lands described in said deed, free and clear of all * * * claims * * * of every kind, of any person or persons * * * whatever, whether said land was taxed to such person or not * * * ; and such deed shall be *prima facie* evidence of title in the grantee, * * * and such deed shall be conclusive proof of the matter by it set forth, except that Courts * * * may examine only in regard to such deed, and may hear any testimony in relation thereto to show: First, that the property

.*    *    *    was not assessed    *    *    .*    as required by law." (Section 23.)

Surely, such a deed would, at least, be *prima facie* evidence that the property was properly assessed; and the plaintiffs, if sued in ejectment, would be called on to go behind the deed and prove the falsity of its recitals. It will be presumed that the Collector will issue. a certificate and deed with the recitals, in conformity with law. (*Palmer* v. *Boling*, 8 Cal. 389.)

And in doing so, "there being no error patent upon the face of the proceeding, the deed being the only evidence necessary, would operate as a cloud upon the title." (8 Cal. 388; *Tisdale* v. *Jones*, 38 Barb. 527.)

The jurisdiction of the Court to enjoin "a sale of real estate is co-extensive with its jurisdiction to set aside and order to be cancelled a deed of such property." (*Pixley* v. *Huggins*, 15 Cal. 132; *Hager* v. *Shindler*, 29 Cal. 55.)

*A. Campbell*, for Respondent.

By the Court, SAWYER, C. J.:

This is an action against the Tax Collector of San Francisco, the object of which is to procure a perpetual injunction restraining the sale of certain property upon an assessment made to pay the expenses for widening Kearny street, on the ground that the assessment is void for various reasons, and that the sale and deed of the Tax Collector, although void, would still be a cloud upon the title. The defendant demurred, and the Court sustained the demurrer, on the ground that the facts stated were insufficient to constitute a cause of action, it being held by the Court that the sale would be void upon the face of the proceedings, and that the deed would, therefore, cast no cloud upon the title.

It has been settled from an early day in this State, and in accordance with the decisions of other States, that a Court will not restrain a sale for taxes, or otherwise, when it is

apparent that the sale would be void on the face of the proceedings, upon which the purchaser must necessarily rely to make out a *prima facie* case to enable him to recover under the sale. In such case he has a perfect remedy at law. The principle is, that a proceeding which appears upon inspection to be void constitutes no cloud. (*De Witt* v. *Hays*, 2 Cal. 469; *Burr* v. *Hunt*, 18 Cal. 307; *Robinson* v. *Gaar*, 6 Cal. 275; *Berri* v. *Patch*, 12 Cal. 299, 300; *Weber* v. *City of San Francisco*, 1 Cal. 455; *Hardenberg* v. *Kidd*, 10 Cal. 403.)

In this case there was assessed upon the lands of plaintiffs the sum of eighteen thousand one hundred ninety-three dollars and ten cents. The assessment not being paid, on the 21st of October, the defendant, as Tax Collector, added five per cent to the amount so assessed, making a total amount of nineteen thousand one hundred three dollars and twenty-five cents, or nine hundred ten dollars more than the amount actually assessed, and advertised that he would sell, and was intending to sell for the said whole amount, including the five per cent so added. It is claimed that a sale for this amount would be wholly without authority of law, and, therefore, void.

Section fifteen of the Act under which the proceedings to widen Kearny street were had, prescribes the mode of making an assessment roll, and when made out, provides that " the Mayor shall annex his warrant, and the *same* shall be thereupon *collected* in the *manner* then prescribed by law for the collection of general taxes in said city and county." (Stats. 1863–4, p. 353.) It will be seen that the "same," that is to say, the assessment made, is to be collected. It is not said that anything else is to be collected, and the law for the collection of taxes is referred to for the purpose of designating the *manner* of collecting, and not what shall be collected. In the Act referred to for the manner of collecting, we find a provision that "on the third Monday of October in each year the Tax Collector shall, at the close of his official business for that day, enter upon the tax list or assessment roll, a statement that he has made a levy upon

all the property assessed in said roll, and upon which the taxes have not been paid, for which statement no fees shall be charged; and thereafter he shall charge each and every person an addition of five per cent upon the amount of all. taxes to be paid by such person; which five per cent shall be paid into the County Treasury, one half for the use of the State, and the other half thereof for the use of the county." Stats. 1857, p. 331, Sec. 13.) It is under this provision that the Tax Collector claimed the right to add five per cent. But the provision directing the percentage to be added has no application. It is no part of the *manner* of collecting. If this provision is applicable, then the last clause of the section is also applicable, which requires that "five per cent shall be paid into the County Treasury—*one half for the use of the State*, and the other half thereof for the *use of the county.*" This is as much a part of the manner as the other. Clearly the Legislature never contemplated the collection of a tax for the benefit of the General Funds of the county and the State, from property holders assessed specially for a local improvement. And if it did, such a proceeding would be arbitrary, and contrary to the requirements of the Constitution, and clearly beyond the scope of the powers of the Legislature. But it was not intended to require this percentage to be added. The language will not reasonably bear such a construction. The Act under which the work was done prescribes exactly what shall be collected, and refers to the other Act solely for the manner of collecting, and nothing in that Act is adopted beyond the mere mode of proceeding, so far as it is applicable. The respondent concedes that the five per cent was added without authority, and that the threatened sale for the whole amount would on this ground have been void. In this particular the counsel on both sides agree, and we have no doubt they are correct. The invalidity of such a sale *in toto* is settled, and such invalidity will be recognized in a Court of law, as well as in equity. It was so held in an action to recover land. "The entire sum is the consideration of the deed, and this being void in part, is

void in whole. The property must, at the time, be liable for all the taxes for which it is sold, for it is impossible to separate and distinguish between them, so that the act may be in part valid and in part invalid." (Blackwell on Tax Titles, 192; *Elwell* v. *Shaw*, 1 Greenl. 339; *Drew* v. *Davis*, 10 Vt. 506; *Doe* v. *McQuillan*, 8 Blackf. 335; *Kemple* v. *McClelland*, 19 Ohio, 324; *Hardenberg* v. *Kidd*, 10 Cal. 404.)

Appellants claim, however, that the deed executed on the sale would be *prima facie* evidence of a good title, and thus the case would fall within the principle of *Palmer* v. *Boling*, 8 Cal. 384. We think not. On this point appellants take a position directly opposite to that maintained by them in respect to the addition of five per cent, when they claimed that the Act adopting the mode of proceeding prescribed by another Act must be strictly construed, and confined strictly to the mode. The Act adopted no more of the one referred to than is embraced in its terms. It simply refers to it for the manner of sale. It nowhere provides what the effect of the deed given upon a sale as an instrument of evidence shall be. The provisions in the Act for the collection of taxes, that a deed containing certain specified recitals shall be *prima facie* evidence of the truth of the recitals, and of the regularity of all prior proceedings, is directly opposed to the common law, and subversive of the ordinary rules of evidence. It will not be presumed that the Legislature intended to extend this rule to other instruments, unless that intention is expressly stated in clear and explicit terms. To do so would be to violate well settled principles of construction. The manner of collecting was the only part of the statute adopted, and the effect of a deed upon a sale for assessments, as an instrument of evidence in subsequent litigation is, certainly, no part of the "manner" of collecting. It would be a strained rather than a strict construction to so hold. It is clearly no more a part of the manner than the adding of five per cent. Besides, the deed, to be *prima facie* evidence under the statute of 1857, must contain the very

recitals there prescribed. Those exact recitals in case of an ordinary tax sale would not be applicable to a case of a sale for a special local assessment to pay for improvements. We are clearly of opinion that no deed which the Tax Collector could make would be *prima facie* evidence in this case of the regularity and validity of all the proceedings resulting in the deed. This would make it cover, not the assessment alone, as in cases of ordinary tax sales, but all the proceedings which made an assessment necessary—a much broader field than the recitals of a mere Tax Collector could cover. If the purchaser should seek to recover the land, it would not only be necessary to introduce his deed, but he would be obliged to introduce his assessment and show the regularity of the proceedings; and when the assessment, advertisement of sale, and deed are introduced, it will necessarily appear that a sale has been made for nearly a thousand dollars more than the assessment. He could make out no *prima facie* case without disclosing upon the face of his evidence the fatal defect, and the owners of the land would not be called upon to rebut his title. There would, then, under the authorities before cited, be no cloud, and there is no ground for sustaining an action for an injunction. This is sufficient to require an affirmance of the judgment, without discussing the other grounds of invalidity of the assessment alleged by appellants.

If their other points are well taken, however, the argument based upon them is *felo de se.* For, if no constitutional, or valid assessment and sale could be made under the law, or, if none was made valid as against plaintiffs, for the reasons claimed, a sale could not affect them, or cloud their title, for the void character of the deed would, in like manner, be apparent without other evidence.

The judgment is affirmed.

Mr. Justice SANDERSON expressed no opinion.